### IN THE

## HIGH COURT OF ERRORS AND APPEALS

### FOR THE

## STATE OF MISSISSIPPI.

---

## APRIL TERM, 1855.

### COMMISSIONERS OF HOMOCHITTO RIVER *v.* DAVID D. WITHERS.

The legislature has general power to pass laws providing for measures of internal improvement of the public rivers and other highways within the limits of the State, subject only to the restrictions and limitations in the constitution. One of these restrictions is, that private property shall not be taken or applied to the public use, without just compensation. *Held*, that in contemplation of this clause in the constitution, it means such property of a specific, fixed, and tangible nature, capable of being had in possession and transmitted to another, as houses, lands, and chattels.

It is difficult to understand how a person can be said to have property in water, light, or air, of so fixed and positive a character as to deprive the sovereign power of the right to control it for the public good and general convenience. Such a right exists as to individuals, and it cannot be interfered with by them; but the State, in virtue of her right of eminent domain, has the paramount right to control and dispose of every thing within her limits, which is not absolute and exclusive private property, to the promotion of the public good; and even to take private property for the same purpose, upon rendering a just compensation for the same.

From the nature of the elements of water, light, and air, the right of an individual to them is necessarily qualified and confined to the time he has them in use and under his control, and must be held in subordination to the gen-

eral good. They are movable and unfixed, incapable of individual appropriation and disposition; and must necessarily be subject to the power of the State, for the general good of the community.

The right of private property exists in an individual in relation to streams of water exclusively his own, such as springs or small watercourses in the interior of his lands, and bounded by them on both sides; and whilst it may exist in reference to public rivers against the interference of private individuals, it cannot be admitted to prevail as to public rivers and highways used for navigation against the paramount jurisdiction of the State.

*Morgan & Harrison* v. *Reading*, 3 S. & M. 366, cited and explained by the court, and declared not applicable to this case.

The doctrine that the State can do nothing which will cause a diversion of a public watercourse not a navigable stream by the common law, or render it less useful to the owner of the adjacent soil, has the sanction of very high authority; but this doctrine is denied by many learned courts and jurists of this country, whose reasoning is more satisfactory in reference to the condition and character of the rivers in the United States; and abundantly show that the reason of this rule of the common law should have little or no force when applied to the great fresh water rivers and lakes of this country. *Held*, that the rule of the common law is not applicable to our large public rivers used for navigation, but that the rights of the owners of the lands bounded by such streams are subordinate to the right and power of the State to use and appropriate them to the public good in promotion of navigation; and that such rivers, whether tide waters or not, are, as to the jurisdiction and power of the State, to be considered as navigable rivers, is supported by the sounder reason.

The 4th section of the Act of Congress for the admission of this State into the Union, which provides that the river Mississippi, and the navigable rivers and waters leading into the same and into the Gulf of Mexico, shall be common highways and for ever free, as well to the inhabitants of the said State as other citizens of the United States, without any tax, duty, impost, or toll thereof, imposed by said State, relates to the right of all citizens to navigate the rivers of the State without charge, and not to the power of the State to improve or change the condition, or alter the course, of those rivers.

The State has the constitutional power to improve the navigation of her rivers, and consequently the power is vested in her to judge of the expediency and to provide for the completion of such works of public improvement.

*Quære.* Has the State the power, under the compact of her admission into the Union, to impose a tax, duty, impost, or toll for the navigation of any of her public rivers, in order to reimburse expenditures made by her in improving the navigation of such rivers, or for any other purpose?

On appeal from the southern district chancery court at Natchez; Hon. A. B. Dawson, vice-chancellor.

David D. Withers filed his bill in the chancery court, in

which he alleged that he was the owner of a large cotton plantation, situated in Wilkinson county, Mississippi, on what is called " Old River," being a former bed of the Mississippi River, but cut off in the year 1796 ; and that the Homochitto River empties its waters into " Old River " at a point above the complainant's plantation ; and its waters, at ordinary low stage of the Mississipppi River, pass through " Old River," removing the deposits of mud, and flow into the Mississippi, keeping open an outlet to said river, which is greatly beneficial to the complainant and others owning estates on " Old River." But that the legislature passed an act for the improvement of the navigation of Homochitto River, and the commissioners appointed for that purpose are proceeding to dig a canal, whereby the water is diverted from the channel of " Old River," on which complainant's plantation is situated, and he has enjoyed the benefit of said water from time immemorial. He therefore prays for an injunction, &c. The bill was demurred to, which was overruled, and an appeal prayed.

*J. Winchester,* for appellants.

The complainant, Withers, by his bill, states that the defendants, commissioners of the Homochitto River, assuming to act under the authority of the legislature of the State of Mississippi, threaten to cut a canal from the Homochitto and Old Rivers into the Buffalo River, and dam up the mouth of Old River, which was and is the natural outlet of the waters of Homochitto and Old Rivers into the Mississippi ; the alleged object and purpose of the proposed canal is to carry off the waters of Homochitto and Old Rivers through the Buffalo River into the Mississippi River, and thus improve the navigation of said rivers.

The complainant asks and has obtained the *extraordinary interposition* of the court of chancery, by writ of injunction, enjoining the defendants from carrying out the purposes of the legislature, upon the alleged ground that the legislative act is unconstitutional and void. First, as being repugnant to the 4th section of the Act of Congress passed March 1st, 1817, " to enable the people of the western part of the Mississippi Terri-

tory to form a constitution and State government, and for the admission of such State into the Union on an equal footing with the original States," which provides " that the river Mississippi and the navigable rivers and waters leading into the same, or into the Gulf of Mexico, shall be common highways, and for ever free." And second, as being contrary to the State constitution, which provides " that no person's property shall be taken or applied to public use, without just compensation being first made."

To this bill the defendants have interposed a demurrer, and the whole merits of the case arise upon a demurrer to the jurisdiction.

The complainant presents his rights, which are threatened to be invaded, in two aspects.

First. As a citizen of the United States, he claims the right to the free navigation of the Homochitto and Old Rivers through the old and accustomed channels, and in the State the same were, at the date of the compact in 1817, and denies the sovereignty and jurisdiction of the State over the navigable rivers within her borders, and the power of the State, even for purposes of increased facilities in navigation, to change or alter the natural channels of such rivers.

Second. That he owns a large and valuable plantation on Old River, and as such owner, is entitled, as appurtenant to his plantation, to the uninterrupted flow of the river in its natural course, which the State cannot interrupt, " without just compensation being first made."

As it regards the first ground, we have two conclusive answers to make to the pretensions of the complainant. First, it is not true, as assumed in the bill, that the United States did, by the act of 1817, reserve, or intend to reserve to herself the sovereignty over the navigable rivers and streams within the State of Mississippi, or the rights of a proprietor over the waters thereof; on the contrary, all the rights of sovereignty and ownership over such rivers were yielded to the State of Mississippi, when she was admitted " into the Union on an equal footing with the original States," subject only to the compact or agreement between the State on the one part, and the

United States on the other, that the navigable rivers and waters within its borders should " be common highways, and for ever free, as well to the inhabitants of the said State, as to other citizens of the United States, without any tax, duty, impost, or toll therefor imposed by the said State." It never has been contended that the State, under this compact, has not a right to improve the navigation of the waters within its borders, and for that purpose divert the waters from their old and accustomed channels ; and where the State has expended its funds to afford increased facilities of navigation, it never has been doubted that she has a right to impose a tax or toll therefor. The only question under this compact is, as to whether the State may obstruct or close the navigation altogether, if public interest or convenience requires it. to do so. My own opinion is, that the State may do so, where the river lies wholly within the limits of the State; and the compact amounts to nothing more than this, that as highways, the rivers shall be common and free to all citizens alike for navigation ; but when the State deems it more beneficial to the public to close this highway by a permanent bridge or railroad crossing it, it is a question only of public expediency, and furnishes no just ground of complaint from individuals. But it is unnecessary to assume or to argue this point in this case. The legislature does not propose here to obstruct or close the navigation of the Homochitto and Old Rivers, but rather to afford increased facilities of navigation. And this the State has a most unquestioned right to do, without first obtaining either the permission of the United States or of D. D. Withers.

A second answer to this first ground is, that it is a mere abstract right to navigate, which the complainant asserts, and which he may never practically exercise. And in the language of Judge McLean, in *Spooner* v. *McConnell et al.*, 1 McLean's R. 357, — " A court of chancery never deals with abstractions, but acts upon existing and practical rights, and prevents impending wrongs. It will enjoin, as before stated, only to prevent an irreparable injury ; and that cannot be considered as such an injury, which depends on a future contingency, such as the exercise of an abstract right. If the complainant shall,

at any future time, think proper to attempt to navigate the river, and shall be prevented from doing so by the dam or dams now threatened to be erected, or shall suffer injury from such dam or dams in his vessel or cargo, he may well claim damages for the injury. In this way can this right of navigation, which is common to all the citizens of the United States, be practically asserted."

The second ground assumed in the bill is, if any thing, even more untenable than the first. It is assumed that the complainant has a title to, and property in, the waters of these rivers flowing by his plantation, as sacred as that to his plantation, and the State cannot take these waters for public use without first making him just compensation therefor. Now, it is true, that when the State grants property to individuals, she retains what is termed the right of eminent domain, which is the ultimate right of a sovereign power to resume the grant for public purposes, on payment of just compensation. All private property is held subject to this ultimate right of the sovereign power. But the navigable streams have never been granted to individuals. The United States, under the ordinance of 1787, and the articles of cession from Georgia, assumed the sovereignty and ownership over the navigable rivers in trust for the common benefit of all the citizens of the United States ; and the States formed out of the territory succeeded to the rights of the United States upon the same conditions and limitations ; and neither the United States nor the States can make a valid grant of the navigable waters to individuals ; and a grant of land bordering on a navigable river does not convey a right to the waters of the river. The State alone has the right of a proprietor over its waters ; and when for public purposes it uses the waters of such rivers, even so as to impede or deprive an individual of his accustomed use of them, it violates no private grant or private right of property. The damage which the individual may suffer, is indirect and incidental, and for which he can have no right of action against any one : it is *damnum absque injuria*. *Bailey* v. *Railroad Co.*, 4 Harrington; R. 397; *Lansing* v. *Smith*, 8 Cow. 146; 3 How. U. S. .S C. 212; 9 Port. 577.

*Ralph North*, on the same side.

The right of the complainant is subject to the public right of navigation of the river, and the means and regulations necessary to the enjoyment of the latter. *Commonwealth* v. *Alger*, 7 Cushing, 97–102; *The Canal Appraisers* v. *The People*, 17 Wendell, 626.

The complainant contends for a use of the river which cannot be enjoyed, without denying to the public the right to avail itself of the means and improvements necessary to its use as a navigable water. Such a proposition needs only to be stated for its refutation, *Sic utere tuo, ut alienum non lædas.* Ib. 85 et seq., 17 Wendell, 626.

The right of the public to the water is paramount; that of riparian owners incidental, subordinate, and contingent; and if the complete destruction of the enjoyment of complainant to the water at his premises was necessary to a perfect or reasonable enjoyment by the public of its right of navigation, the former would have no just ground for complaint. The paramount right of the public is implied in every grant to the riparian owner. 17 Wendell, 626 et seq.

Every act of the legislature causes some injury or inconvenience to individuals. But it is the nature of the social compact that the individual shall yield to such sacrifices as the price of the protection and security of civil government. *Privatum incommodum publico bono pensatur.* Broom's Legal Maxims, 2 and 3; *Governor, &c.* v. *Meredith*, 4 Term R. 794; *Wilson* v. *The Mayor, &c.*, 1 Denio, R. 595; *Lansing* v. *Smith*, 8 Cowen, 146.

That private property cannot be taken for public use without compensation, is not to be denied. Without the guaranty of the constitution, it could not be so taken at common law. But the eminent domain of the sovereign is not exercised in this case, and the rule is not applicable. No property of the complainant is proposed to be taken. There is no substitution of one occupant or proprietor for another, which, in the case of real property, must occur before the rule can be invoked. The gravamen of the complaint is an injury which it is supposed may result from the diversion of the water of the Homochitto

into the canal.   The injury may be great or inconsiderable, but whether one or the other it will be incidental, resulting from a lawful act, and one of those inconveniences which every individual is expected to submit to, without compensation, as the price of the social compact.  *William W. Woodfolk* v. *The Nashville and Chattamooga Railroad Company*, 1 Am. Law Register, 550, decided by Sup. Court of Tennessee in 1853.

In *The Governor and Company of the British Cast Plate Manufacturers* v. *Meredith and others*, 4 Term Reports, 794, by an act of parliament commissioners were authorized to pave, repair, raise, &c., certain streets ; and under this authority defendants raised a street so as to render a gateway communicating with the premises of plaintiffs useless, unless the old arch was taken down and replaced by one of greater altitude.   The action was case, and it was held, that if it could be maintained, every turnpike, paving, and navigation act would give rise to an infinity of actions ; that some individuals suffer an inconvenience under all such acts ; but that the interest of individuals must give way to the accommodation of the public ; that if in fact there had been no provision in the statute providing compensation, the court was not satisfied that any action could be maintained ; that there are many cases, such as pulling down houses or raising bulwarks for the preservation and defence of the kingdom, for which the law gives no action ; that this was one of the cases to which the maxim, *Salus populi suprema Lex*, applies ; and that if the thing complained of was lawful at the time, no action can be sustained.   And the case of *Wilson* v. *The Mayor, &c. of New York*, 1 Denio, 595, was decided upon the authority of the case in 4 Term R., in the same way, and upon the same principle.   The case of *Lansing* v. *Smith*, 8 Cowen, R. 146, is perhaps more in point.   A statute authorized the construction of a basin in the Hudson River in the city of Albany, and erections whereby the dock owned by individuals above were rendered inaccessible, or less easily approached by vessels, and thereby much depreciated in value, without providing any compensation therefor.   The basin and erections were made, or being made, and it was held by the court that, as they were not a direct invasion of private prop-

erty, but a remote and consequential injury merely, and arising from public improvement, the injury was one to which individuals must submit as the price of the social compact; and in the eye of the law the injury was *damnum absque injuria.*

A railroad, canal, or turnpike may so intersect a garden, orchard, or ornamental grounds, as to render it unfit for the purpose it had been used, and ruin the whole premises in the consideration of the proprietor; yet the compensation to which he is entitled must be limited to the intrinsic value of the precise area taken and occupied for the public improvement. The fact that the whole ground will no longer be eligible for the purpose it had been used, cannot be considered as a certain criterion of damages.   Am. Law Register, case above cited of Sup. Court of Tennessee.

The case of *Gardner* v. *Trustees of the Village of New-burg*, 2 Johnson, C. R. 162, has been relied on by complainant, as well as other similar cases.   It is not applicable.   The property or right in dispute was a spring and stream issuing therefrom, to which complainant had an exclusive right as appurtenant to the soil owned by him.   The public had no right or interest in the subject in dispute, except that of eminent domain.   Moreover, the act in this case was expressly intended to take and appropriate the spring to the public use.   The injury was not remote and consequential, resulting from a public improvement, having some other object for the benefit of the community than that of divesting or depriving the party aggrieved of the subject in dispute.   If the grievance complained of had been a consequential injury, such as might result from the intersection of the stream by a canal or railroad, this would not have been such an invasion of private right as would have entitled the party to compensation beyond the intrinsic value at the time of the quantity of land actually taken.   The case of *Belknap* v. *Belknap*, 2 Johns. C. R. 463, has likewise been cited, of which it is only necessary to say, that the defendants exceeded the powers conferred by the legislature, and that the act was designed for the benefit of individual owners of swamp lands.

The Homochitto is a navigable stream, has been declared such, and is subject to the same right in the sovereign to improve

3 *

and regulate its use, as if the tide ebbed and flowed the whole extent of the limits of the proposed improvement. The canal authorized by the legislature must be presumed to be a wise and necessary improvement, and designed for the purpose of overcoming or obviating obstructions and barriers to an easy and practicable navigation of the river. Even if the object had been in fact, what we are not warranted in presuming, to drain the swamp lands mentioned, this being an object of public utility, in which the benefit of a large community might be promoted, the complainant would have had no cause of action. His injury then would only have been an inconvenience suffered for the general welfare of the public.

When Lord Hale wrote his treatise, " *De Jure Maris,*" streams of fresh water used as common highways were, as much as rivers and arms of the sea in which the tide ebbed and flowed, subject to the power of the sovereign to institute all needful regulations for convenient navigation, without reference to private rights. *Ex parte Jennings,* 6 Cowen, 539 note.

The rights of the riparian proprietor owning indeed *usque ad filum equæ,* were subject to the superior right of the sovereign to regulate and facilitate the use of the rivers by the public. 7 Cushing and 17 Wendell, above cited.

*Yerger, Carson,* and *Shields,* appeared for the appellee.

Mr. Justice HANDY delivered the opinion of the court.

The substance of the bill in this case is, that the complainant owns and has in possession a large and valuable estate in lands, slaves, &c., worth about $200,000, on Old River, which was formerly a bed of the Mississippi River, but was cut off about the year 1796; that the Homochitto River empties into Old River, at a point above the complainant's plantation, and its waters, at an ordinary or low stage of the Mississippi River, pass through Old River, and thus flow into the Mississippi River, thereby removing the deposits of mud caused by the floods of the Mississippi River, from Old River, keeping open and navigable an outlet therefrom to the Mississippi River, which is greatly beneficial to the complainant and others owning estates on Old

River; that an act was passed by the legislature of Mississippi, and approved 5th March, 1850, for improving the navigation of the Homochitto River and any outlet from the same through Old River and Buffalo Bayou to the Mississippi River, and for removing obstructions in said streams, and excavating and digging a canal into Buffalo River from the Homochitto or from Old River to Buffalo River, and that the commissioners, by that act, are proceeding to execute and make a canal on Old River below the mouth of the Homochitto River, and above complainant's lands, which will not touch his lands; that complainant and his grantors have from time immemorial used and enjoyed the said waters through his lands, for agricultural purposes, and for navigation in transporting crops to market, and receiving supplies, before Old River was cut off, and while it was a part of the Mississippi River, and since that time, by means of the water furnished Old River from the Homochitto; that the projected canal would cause a diversion of the waters of the Homochitto and Old River, and cause the outlet of Old River to fill up, and thereby deprive the complainant and others of the benefit of navigating the outlet, and render the neighborhood unhealthy, and otherwise greatly deteriorate the value of his property, and render the injury irreparable.

The bill charges that the act of the legislature authorizing the canal is unconstitutional: 1st, because it takes private property for public use, without compensation; and 2d, because it is a violation of the act of congress under which the State was admitted into the Union; and prays for an injunction restraining the commissioners from proceeding with the work.

The commissioners filed a demurrer to the bill, which was overruled; from which order this appeal was taken by the defendants.

I. The first question for consideration is the position taken in the bill, that the complainant had the exclusive right of private property in the waters of Old River, passing by his lands and bounding them, subject only to the easement of the public to navigate and use it as a public highway, and that the act authorizing the canal in question is unconstitutional, because it deprives him of that right by diverting the water from its nat-

ural course, and thereby takes his private property for public use without just compensation. We will proceed to consider this question.

It cannot be denied that the legislature has general power to pass laws providing for measures of internal improvement of the public rivers and other highways within the limits of the State, subject only to the restrictions and limitations in the constitution. One of these restrictions is, that private property shall not be taken or applied to the public use without just compensation ; and a question arises, What must be understood by the term private property in the contemplation of the constitution?

It appears to us that it applies to such property as belongs absolutely to an individual, and of which he has the exclusive right of disposition; property of a specific, fixed, and tangible nature, capable of being had in possession and transmitted to another, as houses, lands, and chattels. But it is not easy to understand how a man can be said to have a property in water, light, or air of so fixed and positive a character as to deprive the sovereign power of the right to control it for the public good and general convenience. Such a right exists as to individuals, and it cannot be interfered with by them. But the State, in virtue of her right of eminent domain, has the paramount right to control and dispose of every thing within her limits which is not absolute and exclusive private property, to the promotion of the public good, and even to take private property for the same purpose, upon rendering just compensation.

From the nature of the elements of water, light, and air, the right of an individual to them is necessarily qualified and confined to the time he has them in use and under his control, and must be held in subordination to the general good. 2 Black. Comm. 14. They are movable and unfixed, incapable of individual appropriation and disposition, and must necessarily be subject to the power of the State for the general good of the community.

If this were not true, by what right could the State exercise the power of improving the navigation of rivers, by deepening

the channels, removing bars or other obstructions, or erecting levees or other public works for the improvement of lands bordering on watercourses? For frequently such works operate the greatest injury to the proprietors of lands adjacent to them, causing overflows, draining off the water which was of great value to the lands in supplying smaller streams which watered the interior of the lands, destroying the benefits of valuable private improvements and privileges, such as wood yards, landings, mill sites, or fishing grounds possessed by the riparian proprietor before the work was done by the State. The right of private property contended for here, would exclude the power in all these and similar instances to make improvements upon public rivers for the public good, a power constantly exercised by the legislatures of the States of the Union, and most clearly within the sphere of their authority. *Spooner* v. *McConnell,* 1 McLean's R. 337. For the position taken rests upon the ground that the public has a mere easement or right of passage over the stream, the right of property being in the riparian proprietor, which cannot be interfered with or impaired in any manner by the State.

Whilst the right exists in the individual in relation to the streams of water exclusively his own, such as springs or small watercourses in the interior of his lands, and bounded by them on both sides, and whilst it may exist in reference to public rivers as against the interference· of private individuals, it cannot be admitted to prevail as to public rivers and highways used for navigation, against the paramount jurisdiction of the State.

The case of *Morgan and Harrison* v. *Reading,* 3 S. & M. 366, is relied on as sustaining the ground taken in behalf of the appellee here. The rule held in that case is, that the proprietor of the land bordering on a river not a navigable stream by the common law is entitled to the· exclusive use of his land forming the banks of the river, and even to the thread of the stream, and to recover from a third person for the use and occupation of those lands; and that this right to recover for the use of the banks exists whether the stream be regarded as a navigable one at common law, or one not navigable, but a public highway.

It was a claim by an individual against private persons to re-cover for the use and occupation of lands lying on the banks of the Mississippi River; and though much is said in the course of the discussion of the case in the opinion of the learned Chief Justice, it was said in reference to the particular facts of the case, and we do not think it can be properly extended be-yond the case actually presented for determination.   The ques-tion as to the right of the State to divert the waters of a public river, as a measure of public benefit and improvement of navi-gation, or the right of the riparian owner to the use of the waters of such a river, to the exclusion of the power of the State over them, did not arise, and cannot be considered as set-tled in that case.   But that is the question presented here.   It is one of great public importance, and has been the subject of much consideration, and, upon some points connected with it, of great diversity of opinion among the ablest jurists of this country.

It is true that the doctrine that the State can do nothing which will cause a diversion of a public watercourse not a navigable stream by the common law, or render it less useful to the owner of the adjacent soil, has the sanction of very high authority.   3 Kent's Com. 427, 428; *People* v. *Canal Apprais-ers*, 13 Wend. 371, and cases there cited.   These authorities proceed upon the distinction between navigable rivers at com-mon law, which were only such so high as the tide ebbed and flowed, and which belong to the State; and public rivers above the flow of the tide, to which it is said the riparian proprietor has the right and title to the centre of the stream, and the pub-lic has only the right of passage over it.   And the doctrine is founded on the principle of the common law stated by Lord Hale, that "fresh rivers, of what kind soever, do of common right belong to the owners of the soil adjacent," — a principle which, it appears to us, was not applicable to the right of prop-erty in the water, but only in the soil to the thread of the stream, *usque ad filum medium aquæ.*

But the doctrine is denied by many learned courts and jurists of this country, whose reasoning is much more satisfactory in reference to the condition and character of the rivers in the

United States; and we think that they abundantly show that the reason of this rule of the common law should have but little or no force when applied to the great fresh water rivers and lakes of this country, which have not been inaptly characterized as " inland seas." A few extracts from these authorities are worthy of being presented, for their great appositeness and force.

In the case of *The Canal Appraisers* v. *The People*, 17 Wend. 616, in which the decision of the Supreme Court of New York, in the case in 13 Wend., above cited, is reversed, Mr. Senator Beardsley says: " What good reason can be urged in favor of applying these principles to our large American rivers, and thus keeping up a distinction in name, where in reason and good-sense none should exist? Why, for instance, should proprietors of land on the Mississippi, where the tide ebbs and flows, be restricted to the bank of the river, and that part be called navigable only, and those proprietors of lands immediately above the flow of the tide be suffered to go to the centre of the stream, when the river, in point of fact, is navigable for thousands of miles above tide water? Yet such are the absurdities of the common law when applied to our large rivers. In England this rule is very proper in reference to their small rivers, and is calculated to prevent litigation by assigning to each definite owners. But in respect to our large rivers, there does not appear to be any propriety in the rule."

In the same case, that eminent lawyer, Mr. Senator Tracy, after reasoning that only such rules of the common law prevail in this country as were adapted to its peculiar condition and circumstances, says: " That the mere condition of the rivers being fresh, and not subject to the flow and reflow of the tide, does not of itself determine that the *alveus* or bed of them belongs to the riparian possession, has to be admitted in respect to many rivers in this country. The rivers Niagara and St. Lawrence, for instance, are acknowledgedly public rivers, in every sense, as much as if they were arms of the sea into which the tide flowed. The reasons of the rule laid down by Lord Hale, when weighed against the considerations which it seems to me should determine a rule for this country, are as dissimilar

and disproportionate as the rills of an island when contrasted with the expanded lakes and magnificent rivers of a continent." Ib. 622.

In *Carson* v. *Blazer*, 2 Binney, 477, C. J. Tilghman says: — "The common law principle concerning rivers, even if it extended to America, would not apply to such a river as the Susquehanna, which is a mile wide, and runs several hundred miles through a rich country, and which is navigable and is actually navigated by large boats. If such a river had existed in England, no such law would ever have been applied to it."

And Mr. Justice Yeates says, in the same case : — "The uniform idea has ever been, that only such parts of the common law as were applicable to our local situation have been received in this government. The qualities of fresh and salt water cannot, amongst us, determine whether a river shall be deemed navigable or not. Neither can the flux or reflux of the tides ascertain it." The same doctrine is held in South Carolina, 1 McCord, 580. Again, in Pennsylvania, 14 Serg. & R. 71, 1 Watts & Serg. 346 ; in Alabama, 2 Porter, 436 ; in Delaware, *Bailey* v. *Railroad*, 4 Harrington, 389; *Rundle* v. *Del. Canal Co.*, 14 How. (U. S.) 93.

In New York the cases are not harmonious. But in the case of *Hooker* v. *Cumming*, 20 Johns. R. 101, C. J. Spencer, who favors the common law rule, declares "that he concurs in the doctrine that all rivers in fact navigable, whether above the flow of the tide, or whether in the whole extent unaffected by the tides, in reference to the use of them, are to be considered as public, and subservient to public accommodation, and liable to governmental regulation."

It is to be observed that the most of the cases in which the common law has been declared to exist in this country, were contests between individuals, in which the paramount right of the State was not involved.

But this alleged vested right of an individual to the waters of a public stream as against the State, is thus explicitly denied in *Lansing* v. *Smith*, 8 Cow. 148, by Mr. Justice Sutherland, who appears to have gone the full length of the contrary doctrine in the case in 13 Wend., above referred to. He says : — "If the

act be unconstitutional, it must be on the ground that the plaintiff had, either at common law as owner of the adjacent soil, or by virtue of the .patent from the State for the land under water opposite to the shore, a claim to the natural flow of the river, with which the State had no right to interfere by any erections in the bed of the river, or in any other manner. This proposition appears to the court too extravagant to be seriously entertained. It denies to the State the power of improving the navigation of the river by dams, or any other erections which must affect the natural flow of the stream, without the consent of all the proprietors of the adjacent shore within the remotest limits which may be affected by the operation. Every great public improvement must, almost of necessity, more or less affect individual convenience and property ; and when the injury sustained is remote and consequential, it is *damnum absque injuria,* and is to be borne as a part of the price to be paid for the advantages of the social condition. This is founded upon the principle that the general good is to prevail over partial individual convenience." 8 Cow. 149.

Upon due consideration, we are of opinion that the doctrine that the rule of the common law is not applicable to our large public rivers used for navigation, — that the rights of the owners of the lands bounded by such streams are subordinate to the right and power of the State to use and appropriate them to the public good in promotion of navigation, and that such rivers, whether tide waters or not, are, as to the jurisdiction and power of the State, to be considered as navigable rivers, — is supported by the sounder reason, and should be established as the law of the land.

In addition to the strong reasons of principle and public convenience justifying the authority of the State over the public rivers and highways of navigation within her borders, it is not to be disregarded that the policy of the State has been so to exercise her right of eminent domain; and the statute-book is full of instances of acts affecting the course and condition of such rivers. This legislative indication of the nature of the right and the extent of the power of the State over the subject, acquiesced in as it has been for such a length of time, furnishes

strong evidence that the limitation in the Federal and State constitutions relied on in this case in behalf of the appellee, has not been understood to take away the paramount right of the State to make such regulations and dispositions in relation to all public rivers of the State as might be deemed necessary and expedient for the general welfare.   Cases of hardship to individuals will doubtless arise, and have arisen, under the exercise of this power; and when the operation of the particular measure is greatly oppressive to an individual, or ruinous to his interest, it may constitute a fit subject for appeal to legislative justice for adequate remuneration.   If the private injury be great, it is not to be presumed that the legislature will turn a deaf ear to the application.   But if it were to be so, it would furnish no reason against the power of the legislature to carry out the improvement.

II.  The second objection raised to the act of the legislature is, that it is in violation of the last clause of the 4th section of the act of congress for the admission of this State into the Union, which provides that " the river Mississippi, and the navigable rivers and waters leading into the same, and into the Gulf of Mexico, shall be common highways and for ever free, as well to the inhabitants of the said State as to other citizens of the United States, without any tax, duty, impost, or toll therefor, imposed by said State; " and it is insisted that, under this compact, the State was prevented from doing any act which could obstruct or divert the waters of the Homochitto River from their natural and usual course.

We do not consider this position tenable.   It might be a question, under this compact, whether the State would have a right to impose " a tax, duty, impost, or toll " for navigation of any of the rivers embraced in the act of congress.   But we think it clear that the provision of the act relates to the right of all citizens to navigate the rivers of the State, without charge, and not to the power of the State to improve or change the condition or alter the course of those rivers.   The object was to guarantee the right of free navigation in the public rivers of the State, without reference to their condition, whether as they then were or should in future become, either in the course of

nature or by the action of the State under its unqualified powers to act upon the subject in promotion of the general good. Those powers remain as ample as if this State had been one of the original States of the Union, and are entirely unaffected by this act of congress. This has been settled by the Supreme Court of the United States in *Pollard's Lessee* v. *Hagan*, in which the question under consideration arose, under a provision of the act for the admission of Alabama into the Union, in substance the same as the provision in the act in relation to this State. It is there held, that when the State was admitted into the Union on an equal footing with the original States, she succeeded to all the rights of sovereignty, jurisdiction, and eminent domain which originally belonged to Georgia before the cession, and which had been temporarily held by the United States before the admission of the State into the Union; and that the State has as much power over the navigable rivers within her limits, as the original States possessed. 3 How. 212.

As above remarked, a question may arise under this compact, whether the State would have the power to impose a tax, duty, impost, or toll for the navigation of any of her public rivers, in order to reimburse expenditures made by her in improving the navigation of such rivers, or for any other purpose. But that question does not properly arise here, and we do not intend to express any opinion upon it.

With regard to the general merits of this case, as involving the constitutional power of the State, it is admitted by counsel that the State has the power to improve the navigation of her rivers. If so, has she not the right to determine whether the proposed measure be an improvement or a destruction to the navigation? And if she determines that it will be an improvement to the navigation of the Homochitto River, and conducive to the general good, to divert its waters at a given point into Buffalo River by means of a canal, what power can say that the discretion was improperly exercised? The power to make an improvement in the navigation of the river, being undefined as to the mode of its exercise, and unlimited in extent, necessarily carries with it the right to judge whether a particular

measure is an improvement or not; for there is no power to solve the question except the legislature, and from their judgment there is no appeal except to the legislature itself. *Commonwealth* v. *Alger*, 7 Cushing, 102. The removal of obstructions may cause an entire change of the course and channel of a river, and ultimately prove injurious to its navigation, as well as destructive to the private interests connected with it. A new cut-off or pass may be occasioned by removing bars or shoals, and the river be thereby entirely diverted from its usual course, and the advantages of it to particular individuals seriously impaired, if not entirely destroyed. Yet it would scarcely be denied that such works are within the power of the legislature. And if the principle be sanctioned that it is not for the legislature, but for individual members of the community, by asserting a right of absolute property in the elements of nature, to determine whether a particular measure is for the public good with reference to the public rivers of the State, it would either put an end to all such improvement by the States, or throw this valuable power into the vortex of the federal government; for no measure of public improvement by the State could be carried out without first obtaining the consent of every one who might claim to be interested in the enterprise. In view of such results, we cannot hesitate to declare that the State has the power to judge of the expediency and to provide for the completion of such works of public improvement.

The object proposed in this instance was to improve the navigation of the Homochitto River, by means of a cut-off or canal uniting its waters with those of Buffalo River. The navigation of that river is not destroyed, as is contended; but a different outlet merely is given to it, which the legislature have deemed most beneficial to the public. The navigation of the river is continued, but in part through a different channel. The case is not different in principle or practical effect from the change of the channel of a river by removing obstructions, or making a new cut-off in the course of the river, which may be destructive of particular interests as they stood before the change was made, but yet of the most undoubted improvement

to navigation in reference to the public good, and within the unquestioned power of the legislature.

From these views, we are led to the conclusion that the act of the legislature involved in this case is not unconstitutional, and that the demurrer to the bill was well taken.

The decree is, therefore, reversed, the demurrer sustained, the injunction dissolved, and the bill dismissed.