NATHAN MILLER AND SONS, LIMITED, *vs.* EDWIN N. BLINN & others.

ESTES MILLS *vs.* PURITAN MILLS & others.

Bristol.    October 27, 1914. — November 24, 1914.

Present: RUGG, C. J., LORING, SHELDON, DE COURCY, & CROSBY, JJ.

*Mortgage,* Assignment, Discharge, Foreclosure, Breach of condition.  *Executor and Administrator.*

A corporation gave to eight persons who were its directors a mortgage of its real estate, the condition of which was to save the "grantees and each of them" harmless in respect of indorsements on promissory notes of the corporation. The mortgagees thereafter indorsed two notes of the corporation.  New directors of the corporation were elected to succeed those who were mortgagees and the payee of the note received a new note of the corporation which equalled in amount the sum of the two former notes and was indorsed by the new directors and by J, a former director, and by agreement cancelled upon the earlier notes all the indorsements except that of J.  All the former directors except J then assigned all their rights under the mortgage deed "together with the claim thereby secured" to the new directors.  *Held,* that, J not having been released as an indorser from the earlier notes, his liability upon such notes and his right to enforce indemnity under the mortgage continued after the giving and acceptance of the new note and after the assignment.

Upon the death of a mortgagee of real estate, his legal estate as mortgagee descends to and becomes vested in the administrator of his estate or the executor of his will; and, until such administrator or executor is appointed, no one can enforce the rights of the deceased mortgagee.

If a mortgagee of real estate in this Commonwealth dies domiciled in another State, his interest in the mortgaged real estate does not pass to the foreign administrator and no proceedings to enforce the mortgage on behalf of his estate can be begun until an ancillary administrator is appointed here.

An entry to foreclose a mortgage of real estate, which purports to have been

made, after the death and before the appointment in this Commonwealth of an administrator of the estate of one of several persons who as tenants in common owned the legal title under the mortgage, on behalf of the tenants in common who were living and the "estate" of one who had died, is void, as also is a notice of a sale under the power of sale in the mortgage, purporting to have been given in behalf of the same persons.

*Whether,* under the terms of a mortgage, the condition of which was to hold and save harmless the mortgagee in respect of indorsements thereafter made by him on promissory notes of the mortgagor, there can be a default, even after the mortgagor has failed to pay the notes when they became due, before the mortgagee has paid the sums for which he is liable as indorser upon the notes, here was not decided.

LORING, J.  These are appeals from decrees enjoining the foreclosure of a mortgage at the suit of subsequent attaching creditors.  The mortgagor was a manufacturing corporation; the mortgagees were eight persons who were in fact directors of the mortgagor corporation.  The condition of the mortgage was, in substance, to hold and save harmless the "grantees and each of them," in respect of indorsements thereafter made by them on promissory notes of the mortgagor.  A copy of the condition is given below in a note.*

Later, the eight mortgagees indorsed two notes, given by the mortgagor to the Massasoit-Pocasset National Bank, one for $13,000 and the other for $2,000, dated respectively August 5, 1912, and September 13, 1912.  Neither note was paid at maturity,

---

* "Provided nevertheless that if said Puritan Mills, its successors or assigns shall hold and save harmless said grantees and each of them of and from all loss and damage, expenses or charges, including reasonable counsel fees to which they or either of them may be subjected or suffer or incur by reason of endorsements of any promissory note or notes which may from time to time be made by or on account of said Puritan Mills, as said notes shall from time to time hereafter severally mature or become payable, and which said Puritan Mills may for any cause or reason fail to pay at maturity; and until such payment shall pay all taxes and assessments to whomsoever laid or assessed, whether on the granted premises or on any interest therein or on the debt secured hereby; shall keep the buildings on said premises insured against fire in a sum satisfactory to the grantees for the benefit of the grantees and their executors, administrators and assigns any such form and at such insurance offices as they shall approve, and at least two days before the expiration of any policy on said premises shall deliver to them a new and sufficient policy to take the place of one so expiring; and shall not commit or suffer any strip or waste of the granted premises or any breach of any covenant herein contained, then this deed shall be void."

and both were duly protested for non-payment.  Both notes are still held by the bank.

On October 24, 1912, the plaintiff in the first suit, and on April 24, 1913, the plaintiff in the second suit, attached the real estate of the mortgagor in actions which still are pending.

Early in 1913, new directors of the mortgagor corporation were elected.  On February 24, a note was given by the mortgagor in the sum of $15,000 as a continuation of the loan represented by the two notes of $13,000 and $2,000.  This note was indorsed by the new directors, eight in number, and also by Stephen A. Jenks, one of the former board of directors and one of the indorsers of the two notes for $2,000 and $13,000 respectively.  This new note for $15,000 was taken by the treasurer of the mortgagor to the bank and accepted by it.  The bank, however, retained the original notes for $2,000 and $13,000.  "Later," (at a time not stated in the report,) "with the consent of all the parties in interest," the indorsements on the two original notes, with the exception of the indorsement of Jenks, "were cancelled," "with the intention of releasing all the indorsers except said Jenks from further liability under said notes.  It [the bank] intended to look to him as its principal security and for that reason accepted the new note and retained possession of the two earlier notes with his indorsement uncancelled."  On the twenty-fourth day of March following, all the mortgagees except Jenks made an assignment of the mortgage deed and the real estate thereby conveyed and "all other rights arising under said mortgage deed, together with the claim thereby secured," to the eight men who constituted the new board of directors, "the said assignees by the acceptance hereof assuming all of our liability on notes endorsed by us or either of us for said Puritan Mills, and agreeing to pay the same."  Jenks died on April 17, 1913.  It is to be taken (on the master's report *) that Rufus B. Goff (one of the assignees of the mortgage deed) died at some time (not stated) before November 6, 1913.

On November 8, 1913, a certificate of entry for the foreclosure of the mortgage in question was filed in the registry of deeds.  This certified that on the sixth day of November one Paul M.

---

\* The master was Israel Brayton, Esquire.

Burns, one of the assignees of the mortgage, "on his own behalf as one of the assignees and as agent and in behalf of Edwin N. Blinn, Alexander Lockhart, John G. Tinkham, George T. Wiley, Idelle M. Hardy, Charles P. Terry, Estate of Rufus B. Goff, as assignees of the herein before-mentioned mortgage and the Estate of Stephen A. Jenks, one of the original mortgagees," made a peaceable entry to foreclose said mortgage for breach of condition. It appeared from the master's report that both Goff and Jenks were non-resident decedents having no administrator or executor within this Commonwealth, when the entry to foreclose was made. It appeared that later on, namely, on December 12, 1913, an ancillary administrator of the estate of Jenks was appointed in Massachusetts.

On November 8, 1913, notice of a foreclosure sale to be held under this mortgage was published in accordance with the power of sale contained in the mortgage. The master found that the notice of sale, under the mortgage in question, recited that the foreclosure was being made by the assignees thereof and Stephen A. Jenks "as of and under the original mortgage."

On these facts a final decree was entered *: (1) permanently enjoining the seven assignees of the mortgage from foreclosing that mortgage; (2) directing that the assignment of said mortgage "be cancelled and annulled;" and (3) that the certificate of entry for the purpose of foreclosure "be cancelled and annulled." A copy of the decree is set forth below in a note.†

The parties defendant are the seven surviving assignees of

---

\* By order of *Stevens,* J.

† "Final Decree.

"This case came on to be heard at this term and was argued by counsel; and thereupon, upon consideration thereof, it is Ordered, Adjudged and Decreed, that the Master's Report herein be confirmed;

"That the defendants, Edwin N. Blinn, Alexander Lockhart, John G. Tinkham, George T. Wiley, Idelle M. Hardy, Paul M. Burns and Charles P. Terry and each of them be permanently enjoined from foreclosing the mortgage given by the Puritan Mills to Herman G. Myers *et als.*, dated April 5th, 1912, and recorded in Fall River District Deeds, book 165, page 532, and assigned to said defendants; that the assignment of said mortgage made by Herman G. Myers, James T. Powell, Louis B. Bergeron, John A. Clorite, Clark Chase, Jr., George H. Waring, and James E. Cunneen to Edwin N. Blinn, Alexander Lockhart, John G. Tinkham, George T. Wiley,

the mortgage. No representative of either Goff or Jenks has been made a party to this suit.

If the bank which held the original notes for $13,000 and $2,000 had released all the indorsers from liability on these notes, the condition of the mortgage here in question would have come to an end and the mortgage would not have been continued (through an assignment of it by the original indorsers) to protect assignees of it who should indorse a note given to retire the two notes of $13,000 and $2,000. That was the case before the court in *Abbott* v. *Upton*, 19 Pick. 434, relied on by the plaintiff. But that is not the case which we have before us now. Jenks never has been released from his indorsement on the original notes for $13,000 and $2,000, and his estate is still liable thereon. The condition of the mortgage was to save harmless the "grantees and each of them;" Jenks therefore had a right to have the mortgage enforced for his indemnity, and upon Jenks's death that right passed to the administrator of his estate.

The next question to be considered is: Who are the persons by whom the mortgage is to be enforced for the benefit of Jenks's administrator? It would seem to be plain that under our decisions the original mortgagees were tenants in common, not joint tenants, since the obligation secured by the mortgage was due to the mortgagees severally, not jointly. See *Gilson* v. *Gilson*, 2 Allen, 115; *Burnett* v. *Pratt*, 22 Pick. 556; *Blake* v. *Sanborn*, 8 Gray, 154. But if this were not so and the original tenancy was joint and not in common, the assignment of the mortgage by seven of the eight grantees converted the joint tenancy into a tenancy in common. See for example Washburn, Real Property, (6th ed.) § 864.

In the decree appealed from the assignment of the mortgage

---

Idelle M. Hardy, Paul M. Burns, Charles P. Terry and Rufus B. Goff, dated March 24th, A.D. 1913, and recorded in Fall River District Registry of Deeds, April 1, 1913, book 176, page 129, be cancelled and annulled, and that the certificate of entry for the purpose of foreclosure of said mortgage dated November 6th, 1913, signed by Paul M. Burns and recorded Fall River District Deeds Nov. 8th, 1913, book 188, page 66, be cancelled and annulled.

"That the petitioner be awarded its costs, to be taxed as in an action at law, and that execution in common form issue therefor."

is treated as void and the defendants are directed to cancel and annul it. It may be that no direct beneficial interest passed by the assignment of the mortgage to the assignees. Whether that be or be not so is immaterial. If a beneficial interest did pass, in our opinion a payment by the assignees would have ended it under the doctrine of *Abbott* v. *Upton*, 19 Pick. 434. But whatever be the conclusion as to a beneficial interest the legal estate in mortgage of the mortgagees who executed the assignment passed by the assignment to the assignees.

It follows that before Jenks and Goff died the mortgagees were Jenks (as one of the original mortgagees) and the eight members of the new board (assignees of the seven members of the old board other than Jenks). Jenks had an undivided eighth and the other eight had an undivided seven eighths.

But both Jenks and Goff died before the entry to foreclose on November 6, and before the notice of sale (under the power to foreclose) given on November 8. Upon the death of a mortgagee (who dies intestate) his legal estate as mortgagee descends to and becomes vested in the administrator of his estate. R. L. c. 150, § 7. *Smith* v. *Dyer*, 16 Mass. 18. *Fay* v. *Cheney*, 14 Pick. 399. *Haskins* v. *Hawkes*, 108 Mass. 379. It follows that until an administrator is appointed no one can enforce the rights of the deceased mortgagee; not the mortgagee, for he is dead; not the person to whom the mortgagee's legal estate in law descends (to wit the administrator of his estate), because no administrator has been appointed. Further, where (as was the case in this suit) the mortgagee was a non-resident, the mortgage cannot be foreclosed until an ancillary administrator is appointed in Massachusetts.

It is settled that the legal estate in the land mortgaged which a deceased mortgagee had does not become vested in a foreign administrator. *Cutter* v. *Davenport*, 1 Pick. 81. *Hutchins* v. *State Bank*, 12 Met. 421, 424.

The result is that neither the entry to foreclose nor the notice of sale was made by the persons who had the right to foreclose the mortgage, and both of them are inoperative.

The master has found that "the indorsers on the note of February 24, 1913, have paid certain sums on account of the mortgage and mortgaged property, with a view to preserving the

same as security for their liability under the indorsements." *
If these payments were made by the eight indorsers of the note
for $15,000 other than Jenks, Jenks's rights under the mortgage
came to an end *pro tanto*. If they had been made by Jenks as
indorser of the two notes of $13,000 and $2,000, with a view to
preserving his right to be reimbursed for them by the mortgage
they would have been made properly. It is manifest that this
finding was not made with a due appreciation of the rules of law
governing the matter.

Whether there is a breach of the condition of this mortgage
before Jenks has paid the sums for which he is liable (1) under
his indorsement of the two notes for $13,000 and $2,000, or
(2) under the mortgage, is a question which has not been argued
and upon which we now express no opinion.

The decree appealed from was wrong in directing that the assign-
ment should be annulled and cancelled. It was wrong also in per-
petually enjoining the defendants (the seven surviving members
of the new board) from foreclosing the mortgage. It was right
in treating the certificate of entry as inoperative. These de-
fendants, together with the Massachusetts administrators of the
estates of Jenks and Goff, have the right to foreclose the mort-
gage. The relief which should have been granted in this connec-
tion was an injunction perpetually restraining the defendants
(1) from claiming any rights under the entry to foreclose, and
(2) from further proceeding with this foreclosure sale. The
decree should provide that the findings and the decree in this
suit are without prejudice to these defendants' foreclosing the

---

* The payments were stated in the master's report as follows:

| | |
|---|---:|
| "For due premiums of insurance of the buildings . . . . . . . . | $186.00 |
| Oct. 1–13, for due premiums of insurance of the buildings . . . | 80.25 |
| Sept. 27–13, for coal for fires on account of insurance . . . . . | 105.17 |
| Nov. 5–13, record fee, peaceable entry . . . . . . . . . . . . | 1.30 |
| Dec. 1–13, advertising, foreclosure sale real estate mortgage, etc. | 23.80 |
| Dec. 1–13, auctioneer, adjourning sale . . . . . . . . . . . . | 5.00 |
| Nov. 6 to Dec. 9–13, watchman on premises @ $2.00 per day . . | 66.00 |
| | $466.52 |

"In addition to the above, E. N. Blinn, Esq., one of the assignees, has
a charge of $75.00 for legal services rendered the assignees in connection
with the foreclosure, and $5.00 for disbursements in the same matter."

mortgage by entry or sale, or both, when acting with those persons who with these defendants have a right to foreclose this mortgage. The decree, so modified, should be affirmed; and it is

*So ordered.*

*C. R. Cummings,* (*E. N. Blinn* with him,) for Blinn and the Puritan Mills.

*A. S. Phillips,* for Nathan Miller and Sons, Limited.

*L. E. Wood,* for the Estes Mills, submitted a brief.