Cheshire,
Dec. 3, 1940. } No. 3195.

BRENDAN J. KEENAN, *Ex'r v.* SARAH J. TONRY & a.

222

*William H. Watson* and *Dudley W. Orr* (*Mr. Orr* orally), for the executor.

*Howard B. Lane* and *MacKusick & Wenrich* of Massachusetts (*Mr. Lane* orally), for Sarah J. Tonry.

PAGE, J.   We are urged by the appellees to sustain the rulings made below, while the executor argues that the true test of his chargeability is whether he acted in the administration of the Winthrop property in accordance with honest and reasonably prudent judgment.

No court in New Hampshire has jurisdiction to declare the appropriate law. It is true that the parties have either invoked or submitted to this jurisdiction.   But if jurisdiction of the subject-matter is lacking, consent cannot confer it.   *Wolf Klein & Sons, Inc.* v. *Bronstein, ante* 42, and cases cited.   The rule applied here.   Though a probate court assumes jurisdiction of foreign assets without objection, its judgment will not be given credit in the state where the assets lie.   As to such foreign assets the judgment is void.   *Reynolds* v. *Stockton,* 140 U. S. 254, 272; *Jefferson* v. *Beall,* 117 Ala. 436.

"Administration only extends to the assets of the intestate, within the State where it was granted. . . . The administrator appointed in one State has no power over the property in another State." *Taylor* v. *Barron*, 35 N. H. 485, 495, 496. Ancillary administration in Massachusetts "extends to all assets found within the state; and, within the jurisdiction where granted, it is exclusive of all other authority." *Merrill* v. *Insurance Co.*, 103 Mass. 245, 248.

The general rule stated is recognized with practical universality. "The office of administrator of the estate of the decedent in one state is legally separate from the office of administrator of the estate of the same decedent in another state." Restatement, Conflict of Laws, s. 466. This is true when the same person receives letters of administration in both states. "He is responsible in each state only for assets which he obtained or should have obtained as a result of his appointment as administrator by a court of that state." *Ib.*, Comment *a*. See also Restatement, ss. 519, 520; Beale, Conflict of Laws, 1560, 1561.

The general rule is somewhat limited. If the executor, under the New Hampshire appointment, had been able to collect the mortgage note by voluntary payment, without recourse to the aid of any Massachusetts court, the cash coming into his hands might have been charged to him on his accounting here. This would be on the theory that the decedent had title to the note, and its normal *situs* might be thought to be in the domiciliary jurisdiction. *Luce* v. *Railroad*, 63 N. H. 589, 590. A Massachusetts domiciliary executor could have assigned such a note and mortgage given by a resident of New Hampshire, and the assignee, if domiciled here, could have enforced collection. But the Massachusetts executor could not have recovered on the note here. He must first have obtained ancillary administration here so that he could sue in that capacity. *Gove* v. *Gove*, 64 N. H. 503, 504. But the Massachusetts law, because of statutory provisions, would seem to deny to the New Hampshire executor the power even to assign the Winthrop note and mortgage to a resident of Massachusetts, thus enabling the assignee to sue or foreclose. *Cutter* v. *Davenport*, 1 Pick. 81. If the mortgage was to be foreclosed, ancillary administration had to be taken in Massachusetts and the administration of the asset in question came under the supervision of the Probate Court there.

It has been suggested that complete acceptance of the mercantile view would make a negotiable instrument an asset for administration where the document is located at the time of the death of the testator.

Beale, Conflict of Laws, 1481, 1521. If that theory were to be accepted, the note and mortgage were assets for administration in Massachusetts, since at the time of the testator's decease they were held by a Massachusetts bank as collateral security. *Merrill* v. *Insurance Co.*, 103 Mass. 245. Keenan, in his capacity as ancillary administrator, obtained possession of the assets by means of paying the debt they secured, using for that purpose Massachusetts assets obtained by the sale of Massachusetts real estate under license from the Massachusetts court. It cannot be doubted that even under the mercantile theory the note and mortgage were purely Massachusetts assets, subject to the sole jurisdiction of the Massachusetts court. Beale, Conflict of Laws, 1525.

But the mercantile theory seems never to have been fully followed in Massachusetts. The statute of that Commonwealth, in force for over a century and a half, provides that if a mortgagee of Massachusetts real estate dies without having foreclosed the mortgage, the mortgaged property and the debt secured thereby shall be personal assets, to be administered and accounted for as such, "and the executor or administrator shall have the same rights of entry and of action under said mortgage as the mortgagee. . . . " Gen. Laws (Tercentenary *ed.*), c. 206, s. 9.

This statute has been held to apply solely to executors and administrators appointed in Massachusetts. A foreign executor cannot avail himself of its provisions. *Cutter* v. *Davenport*, 1 Pick., 81, 85. According to the latest construction of the statute that we have been able to find, a mortgage of Massachusetts land held by a non-resident decedent can be foreclosed only by an ancillary administrator appointed in Massachusetts, whether such foreclosure be by entry or under power of sale. *Miller* v. *Blinn*, 219 Mass. 266. Since the domiciliary executor could not get a voluntary payment of the note, the mortgage had to be foreclosed, but he had no authority to foreclose. Only Keenan as ancillary administrator could foreclose, and his actions in connection with the foreclosure were not subject to supervision by the New Hampshire court which could not confer the power, but by the Massachusetts court which did confer it.

Though the Massachusetts statute treats such property as personal for some purposes (though still subject to the jurisdiction of the Massachusetts courts), the legislative policy of that Commonwealth appears to impress upon it the character of real estate for purposes of the Massachusetts succession tax. *Hawkridge* v. *Treasurer*, &c., 223 Mass. 134; *United States Trust Co.* v. *Commonwealth*, 245 Mass.

75, 78. This would seem to be an added reason why the Massachusetts courts should be permitted sole jurisdiction.

It is apparent that since the asset in question is from every point of view a Massachusetts asset, no New Hampshire court has jurisdiction to determine whether or not the asset has been maladministered. The domiciliary executor had no power under his New Hampshire appointment to intermeddle with the Massachusetts assets. *Goodwin* v. *Jones*, 3 Mass. 514, 521. Whatever decree the Massachusetts court may make in the premises would be conclusive here. *Judge of Probate* v. *Heydock*, 8 N. H. 491, 496; *Dawes, Judge of Probate* v. *Boylston*, 9 Mass. 337, 355, 357; *Hooker* v. *Olmstead*, 6 Pick. 480, 483. If there should be a judgment here, it would have no effect in Massachusetts where the assets still are.

One question at issue is whether the ancillary administrator had authority to bid at the foreclosure. Another relates to the chargeability of the administrator. Those questions can be answered only by determining the law of the *situs* of the assets. Restatement, Conflict of Laws, s. 468; Beale, Conflict of Laws, 1462. There is special reason for remitting the decision of those questions to the courts of the *situs*, when those courts already have before them a proceeding in which the issues may be raised and adjudicated. *Parsons* v. *Lyman*, 20 N. Y. 103, 119. Comity clearly demands such action here.

Not only did the courts below err in assuming jurisdiction of questions of maladministration of assets under the exclusive jurisdiction of Massachusetts, they also assumed to invade that jurisdiction by determining what allowance should be made to Keenan for his services and expenses in the ancillary administration. One New Hampshire Probate Court has already tried to do that, without any success except in so far as the allowance charged the New Hampshire assets. *Ela* v. *Edwards*, 13 Allen, 48. See also Beale, Conflict of Laws, ss. 1560, 1561, 1562. It would seem that there are now no New Hampshire assets which any order made here can charge.

Of course, any balance found due from the ancillary administrator and decreed by the Massachusetts court to be paid over to the domiciliary executor must be accounted for in the Probate Court for Cheshire County. *Heydock's Appeal*, 7 N. H. 496; *Goodall* v. *Marshall*, 11 N. H. 88, 90, 91, 93; *Low* v. *Bartlett*, 8 Allen, 259, 263. Meanwhile the Cheshire courts have no jurisdiction to make any order relating to the proceeds of the Massachusetts assets or their administration. The decree must be modified so as to strike from

the account all items charging or discharging the executor with respect to such assets and their administration.

It seems that the domiciliary executor has the duty of exercising due diligence to hold the ancillary administrator to the performance of his duties in Massachusetts, and it is supposed that there might be cases where the legatees could hold the executor liable on his bond here for failure of that duty. But even if that were not so, it is believed that the Probate Court for Cheshire County, upon proper petition and proof of such failure, has the power to remove the executor and appoint an administrator with will annexed whose duty it may be to take steps in Massachusetts to have any liability of the ancillary administrator determined there and any balance in his hands turned over for administration here.

*Case discharged.*

ALLEN, C. J., did not sit: the others concurred.