IN THE MATTER OF THE ESTATE OF CHARLES E. BROWN, DE-CEASED.

*Sussex, March* 1, 1946.

HARRINGTON, President Judge, sitting.

598

*Houston Wilson* and *Frederick P. Whitney,* both for exceptants.

*James M. Tunnell, Jr.,* for Baltimore Trust Company, administrator, *c. t. a.* of Charles E. Brown, deceased.

HARRINGTON, President Judge: The exceptions relate to (1) various expenditures by Baltimore Trust Company, as administrator, *c. t. a.,* appearing on the debit side of the supplemental account of October 12, 1944; (2) the failure of Baltimore Trust Company, as such administrator, to supervise the administration of property of the decedent, located in the State of Virginia, and to compel a proper accounting therefor in that State by the ancillary administrator appointed there; (3) the claim that Baltimore Trust Company, as administrator, should be compelled to pay interest on the funds of the decedent's estate, received by it, because of its failure to distribute them to the parties entitled.

The exception in the first class and the answer thereto merely involve questions of fact, and need not be set out at length, but, in the main, the answer is proper. There is an allegation, however, "that it is out of order here to rely upon the bill previously paid to Messrs. Tunnell & Tunnell because the bill already appeared in the first account and no exception was taken to the same. The time for taking exceptions to matters appearing in the first account has long since expired." I do not understand that there is any exception to the payment made Tunnell & Tunnell, for legal services rendered by them, and which appears in the first account. The exception is merely to the amount paid them, appearing in the supplemental account, and which is alleged to be improper in view of the fee previously paid them. The above quoted allegation is neither pertinent nor sufficiently definite, and should be stricken out.

The exceptions in the second class relate to a holly-wreath business, alleged to have been owned and operated

by Charles E. Brown in the State of Virginia at the time of his death; to certain property in the State of Virginia, used by him in connection therewith; to accounts due and owing the deceased from the operation of his holly-wreath business; and to certain valuable jewelry alleged to have been on his person at the time of his death.

### The exceptants allege:

(a) That because they were "often unable to agree among themselves, as to the best course to take in the settlement of their estate, as well as of their admitted inexperience in matters relating to settlement of estates and the conduct of business generally, Baltimore Trust Company was under the necessity and duty to exercise a close supervision over the settlement of said estate"; (b) that they "have consistently exerted every effort within their means to cause Baltimore Trust Company to determine the extent, value and nature of the Virginia state, aforesaid, and to secure a full and complete accounting thereof from one Charles E. Hughes, whom your petitioners requested be appointed Ancillary Administrator of said estate in Virginia, on the advice and counsel of Baltimore Trust Company, after being advised by Baltimore Trust Company that it was not in a position to act in that capacity"; (c) that Baltimore Trust Company, "notwithstanding its duty and necessity in that respect has failed and neglected to exert more than a very little effort to determine what the estate of the decedent, located in the State of Virginia, consisted of, or to secure any accounting whatever from said ancillary administrator therefor"; (d) that "as a result of their own efforts in that regard, your petitioners are advised and therefore aver that said business, as a going concern, together with the realty, personal property and equipment aforesaid, and accounts, together with the reasonable profits from the prudent operation thereof from the date of the death of the said decedent would be worth at least $75,000 net, and the unrecovered and unaccounted for items of jewelry, aforesaid, are worth at least $1500"; (e) that "as a result of their own efforts in that regard, your petitioners are advised and therefore aver that the said Charles E. Hughes:

"(1) Has arbitrarily appropriated unto himself said holly business and the said personal property and equipment salvaged from a fire, and is now operating said business as a going concern for his own account;

"(2) Has exhausted substantially all of the properties and estates used in connection therewith and the proceeds derived from the operation thereof in the name of the estate through mismanagement and failure to account therefor;

"(3) Has arbitrarily charged off all accounts due and owing the decedent as arising out of his past operations of such business;

"(4) Has arbitrarily appropriated unto himself, as his own, all items of personal jewelry upon the person of said decedent at the time of his death, claiming, without competent corroborative evidence, that said items were given unto him by said decedent prior to hs death; and

"(5) Generally, has arbitrarily appropriated to his own use and/or negligently wasted all of the said Virginia estate, for which your petitioners are advised and, therefore, aver said supplemental account of Baltimore Trust Company should be surcharged."

It is not alleged that any of the Virginia assets of Charles E. Brown ever came into the possession of the domiciliary administrator.

In its answer, the Baltimore Trust Company, as administrator, avers:

(a) That the entire matter mentioned in this exception "has been ruled upon by this Court", and is *res judicata;* and alternatively,

(b) That this matter deals with objections which "had to be asserted, if at all, as exceptions to the first account", and it is now too late for any exceptions to be raised in this connection; and alternatively,

(c) That the exceptants have been in litigation in Virginia and have applied to the courts of Virginia to obtain relief, as this court contemplated in its opinion previously filed as to the first exceptions; and alternatively,

(d) That the State of Virginia is not only a proper forum but is the only forum for settling matters dealing with the manner in which the ancillary administration in that jurisdiction has been conducted.

Treating the exceptants' motion as in the nature of a demurrer, all but paragraph (d) of the answer must be stricken out. Paragraphs (a) and (b) do not allege sufficient facts to properly inform the exceptants of the

defense intended to be interposed by the defendant. See *West v. Sirian Lamp Co., ante p.* 398, 44 *A. 2d* 658. Nor does paragraph (c) allege a defense. If the exceptants have a remedy here, the fact that they "have been in litigation in Virginia and have applied to the Courts of Virginia to obtain relief" is not sufficient to bar their rights.

The allegations of paragraph (d), however, set up a good defense to this proceeding. The misconduct charged relates to maladministration of property in Virginia by an ancillary administrator appointed there, and the failure of the domiciliary administrator to take steps to compel a proper accounting. This court cannot determine whether, or not, the Virginia assets were properly administered there; the courts of Virginia must decide that question. *Fay v. Haven,* 3 *Metc.,* (*Mass.*) 109; *Price v. Ward,* 25 *Nev.* 203, 58 *P.* 849, 46 *L.R.A.* 459; *Keenan v. Tonry,* 91 *N.H.* 220, 16 *A.2d* 705, 708, 132 *A.L.R.* 1362. The ancillary administration in Virginia "extends to all assets found within the state; and, within jurisdiction where granted, it is exclusive of all other authority." *Keenan v. Tonry, supra;* see also *In re Healey's Estate,* (*Orph.Ct.*) 134 *A.* 684, 4 *N.J.Misc.* 785; *Fay v. Haven, supra.* Moreover, ordinarily the domiciliary administrator is not answerable to interested persons for the misconduct of an ancillary representative in another state. See *Price v. Ward, supra; Keenan v. Tonry, supra;* 132 A.L.R. 1373. This follows from the general rule of law that an ancillary administrator is not accountable to the domiciliary representative. Id. See, also *Bowles v. R. G. Dun-Bradstreet Corp.,* 25 *Del.Ch.* 32, 12 *A.2d* 392; *Beale Conflict of Laws* §§ 465.1, 466.1. No possible exceptions to that rule are involved in this case. See *Croswell's Ex'rs. & Adm'rs.,* 167; 132 *A.L.R.* 1373. Conflict of law principles are involved, and it seems that the statement sometimes made that the domiciliary administrator takes title to all the personal property of the decedent, wherever located, will not bear analysis. *Bowles v. R. G. Dun-Bradstreet Corp., supra.* That statement is based on historical

reasons which do not apply here. *Beale Conflict of Laws* §§ 465.1, 465.2.

When the prior exceptions were disposed of, the question was merely whether the domiciliary administrator should inventory and account for the Virginia assets, which had never come into its possession; the Orphans' Court Judge held that it should not, and that exception was overruled.

The third exception alleges that

"Baltimore Trust Company substantially liquidated the personal estate of said decedent in April, 1943, and presented its First and Final Account June 18, 1943, disclosing an unappropriated balance of $189,059.64, before taxes. By its Supplemental Account, presented October 12, 1944, * * * Baltimore Trust Company discloses an unappropriated balance of $131,627.28, after taxes. Nevertheless, not until October 14, 1944, did Baltimore Trust Company make available for distribution unto and among your petitioners, pro-rata, any part of said personal estate of said decedent. On said date Petitioners were advised that Baltimore Trust Company was ready to distribute $75,000 among your Petitioners, and was retaining the balance of approximately $50,000.00 against the contingencies of (1) An appeal from the judgment of this * * * Court in the matter of the exceptions taken to the First and Final Account, aforesaid; (2) Liabilities to Charles E. Hughes, Ancillary Administrator, aforesaid; and (3) Liabilities to State and Federal Governments for inheritance taxes.

"Prior to said date no part of this estate was made available to any of your said Petitioners except by way of advancements against forthcoming bonds in the form of credits against purchases of personal property and payments on purchase price of real estate belonging to the estate by Bessie Brown and Electa B. Goldsborough, two of your Petitioners, as follows:

| Date | Petitioner | Amount. |
|------|------------|---------|
| 4/16/43 | Bessie Brown | $3,948.57 |
| 6/14/43 | Bessie Brown | 3,911.14 |
| 4/16/43 | Electa B. Goldsborough | . 7,548.57 |
| 6/14/43 | Electa B. Goldsborough | 3,911.14." |

The exceptants then conclude that the defendant has "unreasonably deprived" them of the "use and benefit" of funds belonging to the decedent's estate, and "should be surcharged with interest thereon."

The answer avers:

"(1) The settlement of this estate has been long protracted, and part of the time consumed has been on account of the leisurely manner in which the first exceptions to this account were handled by the counsel for the exceptants. The Orphans' Court was not in a position to decide, and did not dispose of those exceptions, until the second day of September, 1944. The Administrator has heretofore offered to turn over to the exceptants all of the money in the estate, provided that the exceptants would give bond with proper surety to indemnify the Bank for any loss which might result from so doing. The exceptants have failed to take advantage of that offer, apparently preferring to let the Bank protect itself as best it can against any contingency. The only practical course remaining for the Administrator was to retain sufficient funds to guard against the worst possible outcome. The Administrator has known of possible claims against the estate and has been under a duty to remain prepared to meet them. It has turned over to the heirs such amounts of money as its officers considered safe to be turned over to the heirs at the times in question.

"As an alternative defense, * * * it is pointed out that the remedy of the exceptants, in the event of any misconduct of the Administrator along these lines, is fixed by statute. Paragraph 3853 and Paragraph 3860 of the Revised Code of Delaware, 1935, furnish the exclusive remedy for such matters as are referred to in this section of the exceptions."

The defendant's answer concludes with the prayer that the exceptions should be dismissed and the account approved. The first paragraph is not sufficiently definite either as to the defendant's knowledge of outstanding claims against the decedent's estate, or otherwise. *West v. Sirian Lamp Co., supra.* Moreover, neither *Section* 3853 nor *Section* 3860 shows that another court has exclusive jurisdiction of the question raised by the exception filed.

An order will be signed in accordance with this opinion.