In the Matter of the Estate of Charles Edward Brown, Deceased.

*Orphans' Court, Sussex, March 5, 1947.*

HARRINGTON, President Judge, sitting.

*Houston Wilson* and *Frederick P. Whitney,* for the exceptants.

*James M. Tunnell, Jr.,* of Tunnell & Tunnell, for Baltimore Trust Company, administrator *c.t.a.* of Charles E. Brown, deceased.

HARRINGTON, President Judge: The numerous exceptions filed appear in an earlier opinion reported in 28 *Del. Ch.* 596, 46 *A.* 2d 1.

1. The duties of the Baltimore Trust Company, as administrator *c.t.a.* of Charles E. Brown, deceased, with respect to his personal property located in the State of Virginia, were determined in that opinion and this court refused to reconsider that question at the final hearing.

2. There is no basis for the contention that the administrator was not justified in employing experts to assist it in rendering tax reports and to pay reasonable compensation therefor; nor is there any basis for the contention that the compromise payment of certain income tax penalties and of small interest charges was wholly the result of the administrator's negligent delay in performing its duties, and that the account should be surcharged accordingly. The decedent's accounts were in a confused state, and it was difficult to determine what taxes were due.

3. Furthermore, the attorney's fee appearing in the second account, and objected to, was not excessive though a prior payment appeared in the first account.

The exceptants, without being specific, claim however that the administrator should be charged with interest on funds in hand because of its unreasonable delay in distributing them.

Letters of administration on the estate of Charles E. Brown, deceased, were first granted by the Register of Wills for Sussex County to Baltimore Trust Company, a banking institution in that county, on September 4, 1942. On the discovery of a will in December of 1942, it was proved and letters *c.t.a.* were then granted to Baltimore Trust Company; but that is an unimportant detail. The provisions of the decedent's will are also unimportant as the sole legatee died without children prior to the death of the testator.

Mr. Brown, at the time of his death, was engaged in numerous business activities, including growing peonies and canna bulbs for the market, manufacturing baskets, growing sweet potatoes, and various other farming inter-

ests. The administrator, nevertheless, passed what purported to be its first and final account June 18, 1943, or a little more than nine months after the first grant of letters. That account showed an unappropriated balance of $189,-059.64, but the taxes connected with the settlement of the estate had not then been paid.

The administration of the estate has been involved in litigation ever since. The interested parties had 90 days within which to file exceptions to the administrator's account and two days before the expiration of that time, in September of 1943, they filed voluminous exceptions thereto which were heard at a trial beginning November 11, 1943, and ending November 15. They were disposed of by an opinion filed by this court (Richards, Judge) September 2, 1944, and the account was surcharged in the amount of $100. The attorneys for the exceptants then notified the administrator that they were considering an appeal which was, however, never taken. On October 13, 1944, or a little more than a month after the exceptions to the first account had been disposed of, the administrator filed the supplemental account now in controversy, which showed an unappropriated balance, after the payment of taxes, of $131,-627.28. In January of 1945 voluminous exceptions were filed to that account and to the administrator's answer. On March 1st, 1946, this court filed an opinion sustaining some of the exceptions to the administrator's answer, but merely on formal grounds.

The substantial contention with respect to the alleged duties of the domiciliary administrator in connection with the settlement of the Virginia estate by the ancillary administrator was, however, rejected. See 28 *Del. Ch.* 596, 46 *A.2d* 1. An amended answer was subsequently filed by Baltimore Trust Company, as administrator, and the case finally came on for hearing in September of 1946.

The negotiations with the tax authorities with respect to liabilities for estate and inheritance taxes due the State

of Delaware and the United States government were protracted, and were not finally completed with the government until April 2, 1945. Furthermore, for some reason the decedent's Virginia estate had not been settled by the ancillary administrator when these exceptions were filed, or even when the case was heard; but Baltimore Trust Company as domiciliary administrator had been notified that the Virginia property was not sufficient to pay the creditors in that state, and that demands for considerable sums of money would be made on the Delaware assets for that purpose. The precise amount of those demands was not known, however, even at the time of the hearing.

In 1943 Bessie Brown and Electa B. Goldsborough, sisters of Charles. E. Brown, deceased, purchased real and personal property belonging to his estate, and upon their giving forthcoming bonds, the administrator advanced considerable sums of money to them, in the way of credit or otherwise: April 16, 1943, Bessie Brown, $3,948.57; June 14, 1943, Bessie Brown, $3,911.14; April 16, 1943, Electa B. Goldsborough, $7,548.57; June 14, 1943, Electa B. Goldsborough, $3,911.14. Immediately after the supplemental account had been filed on October 13, 1944, Baltimore Trust Company, as administrator, notified all interested persons and their counsel that it was ready to distribute $75,000 (including the payments already made) without requiring any refunding bonds, and also offered to distribute the balance of approximately $50,000 upon the giving of refunding bonds, with sufficient sureties, to protect it from any possible loss; but this offer was refused. On October 30, 1944, Bessie Brown was paid $17,140.29, making the total amount received by her to that date on account of her share of the estate $25,000. On the same date Electa B. Goldsborough was paid $13,540.29, making the total amount received by her as her share of the estate to that date $25,000.

A deceased sister of Charles E. Brown had left to survive her four sons, Edward B. Short, Daniel L. Short,

Raymond C. Short and William P. Short, Jr., each of whom was entitled to a one-fourth of a one-third of the personal property belonging to the Brown estate. Their share in the first distribution was as follows: October 24, 1944, Edward B. Short, $6,250; November 24, 1944, Daniel L. Short, $6,250; June 12, 1945, Raymond C. Short, $6,250; July 10, 1945, William P. Short, Jr., $6,250.

A further sum of $30,000 was also distributed without any forthcoming bonds: March 1st, 1945, Bessie Brown, $10,000; March 2, 1945, Electa B. Goldsborough, $10,000; June 5, 1945, Daniel L. Short, $2500; June 19, 1945, Edward B. Short, $2500; July 12, 1945, Raymond C. Short, $2500; August 10, 1945, William P. Short, Jr., $2500. Of the $131,627.08 balance in hand on October 13, 1944, $105,000 had, therefore, been distributed by August 10, 1945; the greater part as early as October, 1944, though considerable additional sums were also distributed in and after March 1945.

The exceptants seek to charge the administrator with interest on a part or all of the balance shown by the supplemental account of October 13, 1944, and to surcharge the account accordingly because of the alleged unreasonable delay in distributing that fund, whereby they were deprived of its use and benefit. Bad faith is neither proved nor alleged. See *Chase v. Lockerman,* 11 *Gill & J. (Md.,)* 185, 35 *Am.Dec.* 286.

The exceptants do allege, however, that after the $75,000 distribution, the remaining balance of approximately $50,000 was retained by Baltimore Trust Company against the following contingencies: (1) An appeal from the order of this court in the matter of exceptions taken to the administrator's first and final account; (2) liabilities to Charles E. Hughes, ancillary administrator in Virginia; and (3) liabilities to State and Federal governments for estate and inheritance taxes.

The answer denies the charge of unreasonable delay in distributing funds, and alleges (1) that the administrator knew of possible claims against the estate, and distributed such sums as it deemed safe; (2) on October 13, 1944, it offered to distribute the entire remaining balance of approximately $50,000, shown by the supplemental account, provided the exceptants would give bond with proper surety, to indemnify the bank against any possible loss therefrom; (3) the exceptants failed to take advantage of that offer; and (4) as an alternative defense, Baltimore Trust Company relies on *Section* 3853 of the *Revised Code* of 1935.

An administrator should ordinarily use such reasonable diligence and dispatch in settling and distributing the personal estate of the deceased as the circumstances permit. *Theisen, Adm'r., v. Hoey, Leary,* et al., *ante p.* 365, 51 *A.2d* 61; 24 *C.J.* 473; 34 *C.J. S., Executors and Administrators,* § 487, *p.* 372; 30 *Amer.Jur.* 19. By statute, one year from the date of the letters is, however, usually regarded as being a reasonable time for that purpose; but circumstances may justify a longer period. See §§ 3843, 3852, *Rev.Code.* 1935; *Theisen, Adm'r., v. Hoey, Leary, et al., supra.*

*Section* 3852 provides that "until the expiration of that time, he (an administrator) shall not be required to make distribution, nor be chargeable with interest upon the assets in his hands; but if any part of the estate carry interest, or be productive, he shall account for the interest, or produce."

If after the expiration of one year the administrator through culpable negligence or bad faith unreasonably delays the final settlement and distribution of the estate much longer than the circumstances require, he will sometimes be charged with interest on the appropriate part of any moneys in hand from the time when distribution should have been made. *Schouler on Wills, Ex'rs. & Admrs.,* (5th

*ed.*) § 1538; 30 *Amer.Jur.* 19; 33 *C.J.S., Executors and Administrators*, § 213, *p.* 1197. The exercise of good faith and reasonable diligence under the circumstances is, therefore, usually the real controlling factor in determining that question. *Gwynn v. Dorsey*, 4 *Gill & J.*, (*Md.*), 453; 24 *C.J.* 76; 34 *C.J.S., Executors and Administrators*, § 508, *p.* 416. If the settlement of the estate has reached the point where it is apparent that there will be a substantial distributable balance after the payment of all debts, it is often desirable that such reasonable partial distributions be made as are consistent with the rights of all parties and the safety of the administrator. See 24 *C.J.* 473; 34 *C.J.S., Executors and Administrators*, § 487, *p.* 372; 2 *Eng.Rul.Cas.* 171, *note*. *Section* 3853 of the *Revised Code* of 1935 recognizes this, and provides in part:

"* * * payment, or delivery, of any legacy may be refused, if it be apparent that there are not assets for the purpose; and an executor, or administrator, if he know of any outstanding demand, shall not be obliged to pay, or deliver, a legacy, or distributive share, unless the person entitled shall, with sufficient security, become bound to such executor, or administrator, by a joint and several obligation, in a penalty double the value of such legacy, or share, with condition to be void, if the person receiving such legacy, or share, * * * in case of a deficiency of assets of the deceased for the payment of all the just demands and charges against his estate, and all legacies by him duly given, without such share or legacy or part thereof, shall refund and pay to the said executor, or administrator, or his executors, administrators, or assigns, the sum, or value, of said legacy, or distributive share, with interest, or such portion thereof as justly and lawfully ought to be contributed on occasion of such deficiency."

*See State, to Use of Hazzard, v. Layton*, 3 *Har.* 469.

Baltimore Trust Company, the domiciliary administrator, was not responsible for the apparent delay in settling the Virginia estate and could not have appeared in that court seeking to compel more speedy action by the ancillary administrator; only the interested parties had that right. 28 *Del. Ch.* 596, 46 *A.2d* 1, *supra*. Moreover, the disposition of all of the proceedings initiated by the exceptants in this

State was delayed by the failure of their attorneys to file briefs in support of their contentions. Regardless of whether the exceptants thought it probable that approximately $50,000 would be needed to pay possible costs and charges, the administrator did not definitely know what amount would be needed and had the right to be cautious and to rely on the statute providing for refunding bonds. That statute is permissive, but when the administrator knows of outstanding demands against the estate it enables him to require a refunding bond with surety before paying a distributive share. In view of the context of the statute, it would be difficult to construe the phrase "with sufficient security" otherwise. The record clearly shows by unchallenged evidence, however, that $30,000 was distributed without requiring bond after the exceptions had been filed. This perhaps is some evidence that, notwithstanding the statute, the administrator did not intend to act unreasonably.

My attention has not been called to any explanation why the shares of Raymond C. Short and William P. Short, Jr. in the $75,000 distribution were not paid until June and July of 1945, while other payments were made in October and November of 1944. But the mere fact that earlier payments had been made to others without demanding forthcoming bonds is not such clear and convincing evidence that the statute had been waived as to that part of the balance that interest should be charged.

The exceptions are dismissed, and an appropriate order will be entered.