(July 3, 1912.)

## ALFRED G. WALBRIDGE and FRANK H. BAILEY, Respondents, v. A. E. ROBINSON, State Engineer, Appellant.

[125 Pac. 812.]

WATER RIGHTS—STATE OWNERSHIP OF WATERS—DIVERSION FOR USE IN ANOTHER STATE—OPERATION OF LAWS CONFINED TO JURISDICTION OF STATE—GIFT OR GRANT OF PUBLIC RESOURCE NOT CONFERRED.

(Syllabus by the court.)

1.  Under the provisions of the constitution, sec. 1, art. 15, and sec. 3240, Rev. Codes, all the waters of the state when flowing in their natural channels, including the waters of all natural springs or lakes within the boundaries of the state, are declared to be the property of the state.

2.  The title to the public waters of the state is vested in the state for the use and benefit of all the people of the state under such rules and regulations as may be prescribed from time to time by the law-making power of the state, and such title is held by the state in its sovereign capacity as the representative of all the people.

3.  The courts and text-writers uniformly class wild animals, fish, game, gas, light, air, and water in the same category as things of "the negative community," or the property of no one, and subject to the regulation and control of the state in its sovereign capacity.

4.  The state has a right to forbid and prohibit the appropriation and diversion of its public waters for application and use beyond the confines of the state and within the jurisdiction of another state.

5.  Statutes are intended to apply and be confined in their operation to persons, properties, and rights which are within the territorial jurisdiction of the law-making power; and one who claims the benefit of such laws for either person or property beyond the territorial

jurisdiction of the law-making power must rest such claim upon a statute granting such extraterritorial right.

6. No presumption arises, from a failure of the state through its legislative authority to speak on the subject, that the state intends to grant any right, privilege or authority under its laws to be exercised beyond its jurisdiction.

7. The state of Idaho has not granted the right to appropriate and divert the waters of this state for application to any beneficial use beyond the confines of the state.

APPEAL from the District Court of the Third Judicial District for Ada County. Hon. Carl A. Davis, Judge.

Action for writ of mandate to compel the state engineer to give notice and issue a certificate of completion of diversion works. Writ granted. Appeal by defendant. Judgment *reversed.*

Herbert Wing and J. H. Peterson, for Appellant.

Numerous cases have been tried involving questions of jurisdiction relative to the distribution of the waters of interstate streams for irrigation purposes. These cases, however, only determined the rights of individuals, and in no case has the interest of the state in its waters been decided; in fact, the supreme court of the United States has held that this question cannot be raised by the individual, but must be raised by the state itself. (*Rickey Land & Cattle Co. v. Miller & Lux,* 218 U. S. 258, 31 Sup. Ct. 11, 54 L. ed. 1032; *Kansas v. Colorado etc.,* 206 U. S. 46, 27 Sup. Ct. 655, 51 L. ed. 956.)

Although title to things in the negative community was never recognized as vesting in the individual, yet the right of a state or nation, either as proprietor or by reason of its sovereignty to control the use of things in the negative community for the benefit of its citizens, has become firmly established by the courts. (1 Farnham on Waters and Water Rights, 74, 75; *State v. Rodman,* 58 Minn. 393, 59 N. W. 1098; Freund, Police Power, p. 447; *Commissioners etc. v. Withers,* 29 Miss. 21, 64 Am. Dec. 126; *Geer v. Conn.,* 161 U. S. 519, 16 Sup. Ct. 600, 40 L. ed. 793; *Hudson County Water Co. v. Mc-*

*Carter,* 209 U. S. 349, 28 Sup. Ct. 529, 52 L. ed. 828, 14 Ann. Cas. 560.)

When Idaho became a state, Congress approved the constitution adopted in the constitutional convention, and thereby passed the title and control of all of the public waters within the state to the state of Idaho, by ratifying sec. 1 of art. 15.

That the legislature has always assumed that the state owns its waters is to be gathered from a careful consideration of all the water laws passed since Idaho became a state.

In the absence of a specific declaration, the scope and operation of a statute lies within the territorial limits of the state whose legislature enacted it. (Black, Interpretation of Laws (1896), 89, 91; Endlich Interpretation of Statutes (1888), 233, 235; Cooley's Const. Lim., 7th ed., 176; *Hilton v. Guyot,* 159 U. S. 113, 16 Sup. Ct. 139, 40 L. ed. 95.)

"It is always to be presumed, in case of doubt or ambiguity, that the legislature does not intend to derogate from the authority of its successors, to make irrepealable laws, or to divest the state of any portion of its sovereign powers." (Black on Interpretation of Laws (1896), 109, 119; Endlich on Interpretation of Statutes (1888), 497, and cases cited.)

S. H. Hays and Martin & Cameron, for Respondents.

In the absence of legislation to the contrary, it will be presumed that the states are willing to ignore boundaries and allow the same rights to be acquired from outside the state that can be acquired within it. (*Bean v. Morris,* 221 U. S. 485, 31 Sup. Ct. 703, 55 L. ed. 821.)

There are no restrictions as to residence or citizenship of appropriators of water. The fact that the respondents are residents of Montana does not prejudice their rights under our law. (Wiel, 3d ed., p. 341; *Maeris v. Bicknell,* 7 Cal. 261, 68 Am. Dec. 257; *Davis v. Gale,* 32 Cal. 26, 91 Am. Dec. 554; Long on Irrigation, sec. 35; Kinney on Irrigation, sec. 155; Mills' Irr. Man., p. 58.)

The right of appropriation as defined by the best authorities is not controlled by the location of the stream with reference

to the premises which are irrigated. (Kinney on Irrigation, 156; Long on Irrigation, sec. 50, p. 92; *Offield v. Ish,* 21 Wash. 277, 57 Pac. 809, 810; *Thomas v. Guiraud,* 6 Colo. 530; *Hammond v. Rose,* 11 Colo. 524, 7 Am. St. 258, 19 Pac. 466; *Oppenlander v. Left Hand Ditch Co.,* 18 Colo. 142, 31 Pac. 854.)

Interstate streams have been the subject of controversy in several cases. Most of the cases say that no innovations in the law of appropriation are necessary on that account. (Wiel, 3d ed., p. 361.)

The general attitude of the federal court is to see that there is an equitable apportionment of benefits between citizens of each state collectively just as between the states themselves. (Wiel, 3d ed., secs. 342, 366; *Anderson v. Bassman,* 140 Fed. 22; *Cline v. Stock,* 71 Neb. 70, 98 N. W. 456, 102 N. W. 265; *Willey v. Decker,* 11 Wyo. 496, 100 Am. St. 939, 73 Pac. 210; *Howell v. Johnson,* 89 Fed. 556.)

Bear creek being located so near the boundary line in Idaho and the lands to be irrigated in Montana being located so near the boundary line makes the reasoning and the principles of law in the case of *Willey v. Decker, supra,* upon interstate waters applicable in deciding the law of the case at bar. (*Perkins County v. Graff,* 114 Fed. 441, 52 C. C. A. 243.)

The constitution and laws of our state do not prohibit the diversion of water from this state to lands in a sister state. (Const., art. 15, secs. 1–3; Rev. Codes, sec. 3240.)

The development of the material resources of the state is not development to the state or for the state itself, but development for the public. (Wiel, 3d ed., p. 196.)

It is not usual to regard a declaration that the waters of the state are owned by the state as in itself prohibiting the diversion of waters beyond the state boundary lines. (*Perkins County v. Graff, supra; Hoge v. Eaton,* 135 Fed. 411; *Bean v. Morris,* 221 U. S. 485, 31 Sup. Ct. 703, 55 L. ed. 821, and cases cited.)

·AILSHIE, J.—This is an appeal from an order granting a writ of mandate. On the 9th of November, 1909, respondents made application to the state engineer for a permit to appropriate water from Bear creek, which is a branch of the Clearwater river, situated in Idaho county. This application was made for the diversion of waters to be carried beyond the watershed of Bear creek and applied to the purposes of irrigation in the state of Montana. The permit was subsequently issued and was numbered 5494. Prior to the issuance of this permit, a similar permit had been granted to one George F. Weisel for the diversion of waters from Bear creek, to be carried across the line and used in the state of Montana, and permit No. 5445 had been issued. Subsequent to the issuance of these permits, a contest was filed by the respondents, and after a hearing the state engineer refused to take any action on the matter or grant any relief to either of the parties, upon the ground that in issuing the permits he had exceeded his lawful authority in attempting to grant a right for the diversion of the waters of this state to be applied to a beneficial use in another state. Thereafter the respondents herein represented to the state engineer that they had constructed their diversion works, as required under the application and permit, and were prepared to make proof of completion of the work as required by law, and asked that notice be given of the hearing and that they be given a certificate of the completion of their works. The state engineer refused to give notice or take any action in the matter, on the ground that he had no legal authority to grant such a certificate. This suit was thereupon instituted.

The question here arises as to whether a lawful appropriation and diversion of the waters of this state can be made for application to a beneficial use in another state. First of all, it should be remembered that Bear creek is not an interstate stream. It is located wholly within the state of Idaho and does not reach into the state of Montana, and so no question of the appropriation and diversion of the waters of an interstate stream for use either in this state or in a neighboring

state arises in this case. We desire at the outset to also observe that whatever may be said in this opinion shall not be understood or construed as passing upon or indicating any view of this court on the question of the right to divert the waters of a stream in this state and carry it beyond the watershed of that stream and apply it to a beneficial use outside of and beyond such watershed.

The state engineer, acting under authority of the state, has prosecuted this appeal. He contends that under the constitution and laws of Idaho, the waters of the state belong to and are owned by the state, and that the state holds the title to all the public waters in common for the benefit of all its people. In support of this contention, counsel cite sec. 1 of art. 15 of the constitution, which provides that, "The use of all waters now appropriated, or that may hereafter be appropriated for sale, rental or distribution; also of all water originally appropriated for private use, but which after such appropriation has heretofore been, or may hereafter be sold, rented, or distributed, is hereby declared to be a public use, and subject to the regulation and control of the state in the manner prescribed by law," and sec. 3240 of the Rev. Codes, which provides that, "All the waters of the state when flowing in their natural channels, including the waters of all natural springs and lakes within the boundaries of the state, are declared to be the property of the state." It is further contended that this latter declaration of the statute is only a written expression of what the law has always been with reference to the public waters of a state.

Freund, in his work on the Police Power of the state, at sec. 417, seems to entertain this view, and in discussing similar statutes in other states, says: "Such declaration is expressive of what is believed to be the law, and does not intend to make new law."

We think it is clear that the title to the public waters of. the state is vested in the state for the use and benefit of all the citizens of the state under such rules and regulations as may be prescribed from time to time by the law-making

power of the state. This is not, however, an interest or title in the proprietary sense, but rather in the sovereign capacity as representative of all the people for the purpose of guaranteeing that the common rights of all shall be equally protected and that no one shall be denied his proper use and benefit of this common necessity. The interest which an individual or the state may have in such things as water and gas and wild animals has received special consideration from courts and text-writers on account of the tendency of these things to escape beyond the power of control or possession or management of any particular person and without the volition of the one who claims to be the owner. They have, nevertheless, been classed together by most of the authorities.

Mr. Wiel, in his work on Water Rights (3d ed.), sec. 33, says: "In the negative community there is a still more familiar member, namely, animals *ferae naturae;* with which, also, running water has been compared (even so far as to name it accordingly a 'mineral *ferae naturae*'), and which likewise become private property by capture. In the first place, wild animals are, by settled law, members of the negative community; they are nobody's property while wandering at large; and in the next place, running water is compared to animals *ferae naturae* since the days of the Roman law. In the Institutes the law of wild animals follows under the same title as that above quoted concerning *aqua profluens,* saying: 'Likewise wild animals, birds and fishes, since before capture belonging to no one, after capture belong to him who captures them.' "

In *Westmoreland v. De Witt,* 130 Pa. 235, 18 Atl. 724, 5 L. R. A. 731, the supreme court of Pennsylvania says: "Water and oil, and still more strongly gas, may be classed by themselves, . . . . as minerals *ferae naturae.* In common with animals, and unlike other minerals, they have the power and the tendency to escape without the volition of the owner."

In *Katz v. Walkinshaw,* 141 Cal. 116, 99 Am. St. 35, 70 Pac. 663, 74 Pac. 766, 64 L. R. A. 236, Justice Temple, speaking of the ownership in water, said: "The members of the community have a common interest in the water."

In *Commissioners v. Withers,* 29 Miss. 21, 64 Am. Dec. 126, the court, speaking of the relative rights of the individual and state to water, light and air, said:

"It is difficult to understand how a person can be said to have property in water, light, or air, of so fixed and positive a character as to deprive the sovereign power of the right to control it for the public good and general convenience. Such a right exists as to individuals, and it cannot be interfered with by them; but the state, in virtue of her right of eminent domain, has the paramount right to control and dispose of everything within her limits, which is not absolute and exclusive private property, to the promotion of the public good."

It will be found that the authorities quite uniformly class wild animals, fish, water, gas, light and air as things of the "negative community," or the property of no one, and that they are consequently *res communes* and subject to the regulation and control of the state in its sovereign capacity.

The case of *Geer v. State of Connecticut,* 161 U. S. 519, 16 Sup. Ct. 600, 40 L. ed. 793, is one of the most illuminating cases in this country on the power of the state to deal with wild game, and the question determined is there stated as follows:

"The sole consequence of the provision forbidding the transportation of game killed within the state, beyond the state, is to confine the use of such game to those who own it, the people of that state. The proposition that the state may not forbid carrying it beyond her limits involves, therefore, the contention that a state cannot allow its own people the enjoyment of the benefits of the property belonging to them in common without at the same time permitting the citizens of other states to participate in that which they do not own."

This proposition was denied and refuted by the court, and it was held in that case that the state had absolute power and authority in the matter and might forbid the shipment of any of its game, even after reduced to private ownership, beyond the confines of the state. This case has been repeatedly cited and followed by the courts of this country,

as may be seen in Rose's notes to this case.    (12 Notes U. S. Reports, and vols. 3 and 5, Supp.)

The Geer case was followed by this court in *Sherwood v. Stephens,* 13 Ida. 399, and it was there said by the court that "the ownership acquired in game or fish is not such an ownership as one acquires in chattels or lands, but is merely a qualified ownership, and that the possession of fish and game is at all times subject to such regulations as the legislature may see proper to make."

There is no doubt in our minds but that the state in its sovereign capacity is the owner of the waters flowing in the stream thereof and may exercise its authority over the same. If the foregoing propositions be correct, the state has the right to prohibit the diversion of the waters of its streams for use outside of and beyond the boundaries of the state.    In other words, as said by the supreme court in *Geer v. Connecticut, supra,* "The common ownership imports the right to keep the property, if the sovereign so chooses, always within its jurisdiction for every purpose."

Respondents lay special stress on *Bean v. Morris,* 221 U. S. 485, 31 Sup. Ct. 703, 55 L. ed. 821, while appellant  places equal reliance on *Hudson County Water Co. v. McCarter,* 209 U. S. 349, 28 Sup. Ct. 529, 52 L. ed. 828, 14 Ann. Cas. 560.    It should be observed that *Bean v. Morris* is dealing with an interstate stream which is the particular subject that we said in the outset we were not dealing with in this case.    The question decided in that case arose out of a dispute between Morris and Bean as to priorities of appropriation of the waters of a tributary to the Big Horn river flowing through both Wyoming and Montana.    The court held that since both Wyoming and Montana were carved from the arid region and the law of priority of appropriation prevailed in that territory prior to the formation of the states, the court would assume, in the absence of a showing to the contrary, that the states still intended that priority of right by appropriation and diversion should prevail on interstate streams irrespective of state boundary lines.

The Hudson County Water Co. case was dealing with the waters of the Passaic river, a stream situated wholly within the limits of the state of New Jersey. The court held that the state might prevent the diversion of the waters of that stream to a point beyond the limits of the state, and that riparian proprietors could not lawfully contract with a water company so as to authorize such company to pipe the waters of the stream into the state of New York. The court likened that case in principle to the case of *Geer v. Connecticut, ubi supra,* and held that the state might retain its natural resources for the benefit of its own people and might prohibit their being transported beyond its territorial jurisdiction. Among other things, the court said:

"We are of opinion, further, that the constitutional power of the state to insist that its natural advantages shall remain unimpaired by its citizens is not dependent upon any nice estimate of the extent of present use or speculation as to future needs. The legal conception of the necessary is apt to be confined to somewhat rudimentary wants, and there are benefits from a great river that might escape a lawyer's view. But the state is not required to submit even to aesthetic analysis. Any analysis may be inadequate. It finds itself in possession of what all admit to be a great public good, and what it has it may keep and give no one a reason for its will."

The question here to be determined then is: Has the state of Idaho through its law-making body authorized the appropriation and diversion of the waters of this state for application to any beneficial use in another state? It is conceded in the outset that there is no express legislation to that effect. It is contended by the appellant that, in the absence of a positive statute authorizing such a thing or conferring such a right, the right does not exist, and that no presumption arises that the state by its silence intends to permit the diversion and use of its waters beyond its jurisdiction. The respondents, on the other hand, contend that no provision of the constitution or statute expressly prohibits the carrying of water from this state into another state and there applying

it to a beneficial use, and that to do so is therefore no violation of any provision of the constitution or statute. These propositions call for a consideration of the nature of state legislation, both as to the class of subjects to which it applies and the jurisdictional limits in which it can be executed. Black on Interpretation of Laws, p. 91, says: *"Prima facie* every statute is confined in its operation to the persons, property, rights, or contracts, which are within the territorial jurisdiction of the legislature which enacted it. The presumption is always against any intention to attempt giving to the act an exterritorial operation and effect." Endlich on Interpretation of Statutes, p. 233, announces the same principle. Cooley on Constitutional Limitations (7th ed., p. 176) says: "The legislative authority of every state must spend its force within the territorial limits of the state." The supreme court of the United States in *Hilton v. Guyot,* 159 U. S. 113, 16 Sup. Ct. 13, 40 L. ed. 95, says: "No law has any effect, of its own force, beyond the limits of the sovereignty from which its authority is derived."

In the light of these authorities and the fundamental reason and principle of justice on which they rest, it would seem necessary for anyone, who claims a right under the laws of a state, which right is to be exercised beyond the jurisdiction thereof, to rest such right upon some specific legislative grant or authority. In the case at bar, a right is urged to enjoy the use of state property or a natural resource of the state beyond the jurisdictional borders of the state and within the confines of another state. A gift or grant of state property or a public franchise, or a right which must emanate from the sovereignty representing the whole people, ought not to arise by mere inference or failure of the sovereignty to speak on the subject. On the other hand, a failure to speak on the subject or to confer the right in specific terms ought to be construed in favor of the state and against those claiming the right.

Endlich on Interpretation of Statutes (1888, p. 497) says: "It is a settled presumption, in the construction of statutes, that the legislature does not, without express declarations or

clear and unmistakable manifestation of intent, mean to be understood as giving away any public right or stripping the state of any part of its prerogative.'' To the same effect see Black on Interpretation of Laws (1896, p. 109).

In this case it is sought to compel the state engineer to issue to the respondents a certificate showing their compliance with the statute and their right to the use of the waters of Bear creek in applying them to agricultural lands and for agricultural purposes in the state of Montana. The statutes of this state, authorizing the appropriation and diversion of waters and the granting of permits by the state engineer, confer upon the state the right to control the use of such waters, to supervise the distribution by water commissioners, to establish rates, to control the method of distribution, prevent waste and wrongful diversions and obstructions of the flow thereof, etc. (Secs. 3268 to 3283, 3284 to 3293, 3294 to 3298, and 7144 to 7149, Rev. Codes.) It is at once apparent that the state has no means by which it can enforce or execute the provisions of the above-cited sections of the statute beyond its borders; and if the right here contended for were recognized and conferred, the power of regulation and control of that right would be wholly gone so far as it is to be exercised beyond the confines of the state. It was suggested on the oral argument that some of the irrigation states have reciprocity statutes on this subject, and in such a case we can conceive how laws of one state might be executed in another. In other words, if the right to appropriate and divert waters of this state to be used in another state were recognized and conferred upon the condition that the authority of this state may be exercised in the regulation and control of the right in the state in which the use is to be had and that the state of Montana had accepted the conditions of the statute by reciprocal legislation, then this state could execute and enforce the above-mentioned provisions of the statute. As the matter stands, however, we are clear that there is no authority for the diversion and appropriation of the waters of this state for application to a beneficial use in another state.

The underlying principle on which this holding must rest was recognized by this court in *Washington Water Power Co. v. Waters*, 19 Ida. 595, 115 Pac. 682, which was a proceeding in condemnation. It was there contended, among other things, that condemnation proceedings could not be had in this state for the purpose alone of serving a public use in another state. In speaking of that, this court said: "Condemnation could evidently not be had in this state for the purpose alone of serving a public use in another state, but where the use for which the condemnation is sought is a public use in this state, and will serve the citizens of this state . . . . the fact that it may incidentally also benefit the citizens and industries of a neighboring state will not defeat the right of condemnation." The discussion in that case turned on the question of a "public use," and in this case the question involved is a "beneficial use" to be exercised beyond the confines of this state. It is clear to us that the legislation of a state is primarily dealing with people and business and uses within the jurisdiction of the state; and whenever the benefit of such legislation is claimed beyond the confines of the state, either for person or subject matter, some provision in the statute should be found specifically extending the legislation for those purposes and objects.

The judgment of the district court must be reversed, and it is so ordered, and the cause is remanded with direction to dismiss the proceeding. Costs awarded in favor of appellant.

Stewart, C. J., and Sullivan, J., concur.

Petition for rehearing denied.