277 P.2d 252

Bertha M. FARNSWORTH, individually and as Administratrix of the Estate of Ray A. Farnsworth, Sr., Maricopa County, Arizona, Melvin Farnsworth, individually and as Executor of the Estate of Ray Farnsworth, Sr., in the Republic of Mexico, Ray A. Farnsworth, Jr., Anna M. Vance, Elna Baker, Verl Farnsworth, Dorothy Ulmer, LaRee Wright, and Merrill Farnsworth, Appellants, v. M. L. HUBBARD, Appellee.

No. 5718.

Supreme Court of Arizona.

Nov. 29, 1954.

Rehearing Denied Jan. 18, 1955.

Johnson & Shelley, Mesa, for appellants.
John E. Madden, Phoenix, for appellee.

164

LA PRADE, Justice.

The facts leading to this appeal are these: Ray Farnsworth, a resident of Mesa, Arizona and now deceased, owned and possessed a lead mine in Mexico, under a Mexican mine title, which he had contracted to sell to the appellee M. L. Hubbard. Hubbard had taken possession and made periodic remittances to Farnsworth as contemplated by the terms of the contract. Ray Farnsworth later died intestate in Arizona, survived by his widow and ten children. His widow was appointed administratrix in Maricopa County, Arizona. One of his sons, Melvin Farnsworth, was by a Mexican court appointed executor of the estate in Mexico. Farnsworth is designated by the parties as "executor" though there is no showing of a will in Mexico. It appears that the only asset of the decedent in Mexico was his interest in this mine as licensee or concessionaire from the Mexican Government. Subsequent to his appointment Melvin Farnsworth, as executor of the Mexican estate, gave notice to appellee to quit the mine, claiming that appellee had breached the contract of sale. In response to this demand Hubbard brought this suit seeking a declaratory judgment of the rights of the parties under the contract and for a temporary restraining order, which later issued. Melvin Farnsworth then made no further attempt to dispossess appellee on the theory that appellee had breached the contract. During the declaratory judgment proceedings below a Mexican creditor of the decedent demanded payment of a debt. Farnsworth, as executor, was authorized by the Mexican court to take possession of the lead mine on behalf of this creditor. Appellee was then dispossessed. Thereafter, appellee amended his complaint to claim specific performance of the contract and damages for losses sustained by the dispossession. By a later supplemental complaint damages were also claimed by appellee for his dispossession from an adjacent mine owned by him. Appellee was unable to enter this second mine due to alleged acts of the foreign executor. The court below granted appellee specific performance of the contract, damages for dispossession from both mines, and permanently enjoined the representative and all the heirs of Ray Farnsworth, Sr., from interfering with appellee's possession.

Appellants here made sixteen assignments of error pertaining to the various rulings and holdings of the court below. Many concern the power of the court below to take jurisdiction over Melvin Farnsworth in his capacity as foreign executor under the laws of Mexico, a question which recurs throughout the proceedings below. We will first confine our remarks to the status of the foreign executor before the court.

▋ Appellant contends that the trial court had no power to take jurisdiction over the foreign executor. Appellee disagrees, and presents three arguments. The first is that the common law permits suits

against foreign representatives. Appellee states that cases to the contrary are mere innovations due to the influence of various legal writers. In support of this position appellee cites cases decided roughly between 1800 and 1850. On reviewing these cases we cannot agree with appellee's conclusion for their holdings are irreconcilable. Compare Vermilya v. Beatty, 1848, 6 Barb., N.Y., 429, with Brown v. Knapp, 1879, 17 Hun., N.Y., 160. Notice the manner in which the court in Gulick v. Gulick, 1860, 33 Barb., N.Y., 92, reads the holdings of Cambell v. Tousey, 1827, 7 Cow., N.Y., 64, and McNamara v. Dwyer, 1838, 7 Paige, N.Y., 239, 32 Am.Dec. 627. See Swearingen v. Pendleton, 1818, 4 Serg. & R., Pa., 389, and Evans v. Tatem, 1823, 9 Serg. & R., Pa., 252, 11 Am.Dec. 717. These cases neither support appellee's view that jurisdiction to sue a foreign administrator was characteristic of the common law, nor the contrary view that such was prohibited by the common law. At the present time this ambiguity found in the older cases appears to be substantially resolved. The general rule is that jurisdiction does not exist to sue a foreign administrator, and that he must be sued in the jurisdiction issuing his letters. In re Paine's Estate, 1937, 128 Fla. 151, 174 So. 430; Pirnie v. Andrews, D.C.S.D.N.Y.1939, 30 F.Supp. 157; Hargrave v. Turner Lumber Co., 1910, 194 La. 285, 193 So. 648; Feldman v. Gross, D.C.N.D.Ohio 1952, 105 F.Supp. 303; Bennett v. Harrisville Combing Mills, Inc., Sup., 1952, 111 N.Y.S.2d 462; cf. Jasper v. Batt, 1953, 76 Ariz. 328, 264 P. 2d 409.

■ Various legal writers assert this to be the general rule. See 3 Beale, The Conflict of Laws, section 512.1 (1935); Dicey, Conflict of Laws, Rule 132(p) (3rd ed., 1922); Stumberg, Conflict of Laws, 445 (1951); Wharton, Conflict of Laws, section 616 (3rd ed., Parmele, 1905); Restatement, Conflict of Laws, section 512 (1934). The rights and duties of an administrator are defined by the jurisdiction in which he receives his appointment. For other courts to regulate his actions would create confusion and possibly inconsistent duties. The refusal of most courts to grant jurisdiction to sue a foreign administrator and their requirement that such administrator be sued in the jurisdiction giving him his authority appears to be a sound practice with which we are in accord.

■ Appellee next argues that even if the general rule is that such foreign administrators may not be sued in Arizona that an exception to this rule is applicable on the facts of this case. The exception, generally recognized, is that when a foreign administrator controls assets of the decedent in a court's jurisdiction, then suit will be permitted. Cutrer v. State of Tennessee, ex rel. Leggett, 1911, 98 Miss. 841, 54 So. 434, 35 L.R.A.,N.S., 333; Holmes v. Camp, 1916, 219 N.Y. 359, 114 N.E. 841; Sylvania Industrial Corporation v. Lilienfeld's Estate, 4 Cir., 1943, 132 F.2d 887, 145

A.L.R. 612. This exception to the general rule appears to be based upon the considerations stated in Cambell v. Tousey, N. Y., supra, where the court said, 7 Cow. at page 67:

"It is the only way in which an executor, under such circumstances, can be reached. He cannot be compelled to account here, even in relation to the assets received in this state; for having taken no letter of administration here, he is not amenable in that way to any of our courts. He cannot be reached in Pennsylvania, because both his person and the assets are beyond its jurisdiction; and if he is not liable when sued here, for the assets received there, he never can be compelled to apply them to the debts of his testator."

But cf. Michigan Trust Co. v. Ferry, 1913, 228 U.S. 346, 33 S.Ct. 550, 57 L.Ed. 867.

 Appellee claims that both foreign administrator and assets of the decedent are within Arizona. Melvin Farnsworth, in his individual capacity and as executor, was considered to be before the court, and the decedent left assets in Arizona. But a further element is lacking. The assets in Arizona were under the control of the domiciliary administratrix, not Melvin Farnsworth. The exception is intended primarily to deal with the foreign representative who is present with assets of the foreign estate, or where such administrator actually controls assets in another jurisdiction where no domestic administrator has been appointed. In an attempt to meet this objection appellee states:

"* * * the suit involved an Arizona drawn and executed contract with a situs in Arizona (performable in Arizona) concerning a mining title with a situs in Arizona."

Assuming, arguendo, appellee is correct the consequence desired does not follow. If the property is held within the domiciliary jurisdiction, then the Arizona appointed administratrix would be accountable for its management. But that would not justify suit against the foreign administrator as argued by appellee. Moreover, we find appellee's characterization of the location of this asset incorrect. The lead mine is an immovable, having its situs in Mexico. It is of no moment that decedent's interest therein is considered as personalty under Mexican law. It requires no argument to indicate that the removal of this asset from the jurisdiction of the Mexican court is impossible. The exception is inapplicable on the facts presented here. Appellee's assumption appears to be that if personalty then the Arizona court has jurisdiction to affect this property. This is incorrect. The domiciliary jurisdiction has no authority to interfere with the foreign administration of decedent's estates. Keenan v. Tonry, 1940, 91 N.H. 220, 16 A.2d 705, 132 A.L.R. 1362; Restatement, Conflict of Laws, section 466 (1934). This is true even if the asset is

considered personalty. In re Rowley's Estate, 1934, 178 Wash. 460, 35 P.2d 34. It may be true that the domiciliary representative is considered to have title to all decedent's personal property wherever to be found. But this is true only until such foreign jurisdictions appoint domestic administrators as was done here. In re Nolan's Estate, 1940, 56 Ariz. 366, 108 P.2d 301; In re Rowley's Estate, supra; Bowles v. R. G. Dun-Bradstreet Corporation, 1940, 25 Del.Ch. 32, 12 A.2d 392. That foreign jurisdictions will often follow the distribution rules of the domiciliary state does not diminish the power of those courts to administer assets found in their jurisdiction. In re Glassford's Estate, 1952, 114 Cal.App.2d 181, 249 P.2d 908, 34 A.L.R.2d 1259; In re Nolan's Estate, supra.

The final contention made by appellee on this point is that the common law rule has been changed by the legislature. Appellee would have us read sections 27–703 and 21–506, A.C.A.1939, as permitting suits against foreign administrators even if no assets of the decedent are within this jurisdiction. Appellee's argument is based upon the wording of these statutes. Section 27–703 reads in part:

"Any person interested in the administration of a trust, or of the estate of a decedent, infant, insane, incompetent or insolvent person, may have a declaration of the rights or legal relations to ascertain any class of creditors, devisees, legatees, heirs, next of kin or others; or to direct the executors, administrators, or trustees to do or abstain from doing any particular act in their fiduciary capacity; or to determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings."

Section 21–506 reads:

"Actions for the recovery or possession of any property, real or personal, or to quiet title thereto, or to determine any adverse claim thereto, and all actions founded upon contracts, may be maintained by or against executors and administrators in all cases in which the same might have been maintained by or against their respective testators or intestates."

The language above does not specify that the administrator must be appointed in this jurisdiction. Yet this limitation is specifically included in section 21–505, A.C.A. 1939, where the words "appointed in this state" are found. This latter section permits suits by those acting in a representative capacity. Appellee's conclusion from this comparison is stated in his brief:

"By the inclusion of the limiting phrase 'appointed in this state' in section 21–505, and the omission therefrom in sections 27–703 and 21–506, the legislature has made it clear that foreign executors and administrators are subject to suit in Arizona in the type of actions therein contemplated."

In the case of McMaster **v.** Gould, 1925, 240 N.Y. 379, 148 N.E. 556, 40 A.L.R. 792, the court considered a statute which seems to have specifically permitted the result desired by appellee. The court there stated the question, 148 N.E. at page 557:

"* * * the constitutionality of a statute, which in terms permitted suit to be brought or continued against foreign executors and administrators * * *."

In discussing that statute the court there made these observations, 148 N.E. at page 558:

"* * * The foreign administrator as the official of another sovereignty exists only by virtue of the statute of another state, and has no legal existence in this state."

and further stated that the statute

"* * * does not discriminate between a case where there are assets and a case where there are no assets, between an attempt to reach assets and an attempt to get a general judgment in personam. The California executor traveling in New York might be served with a summons."

The New York court found that statute to be unconstitutional as a deprivation of due process of law. That question need not delay us here. We decline to accept appellee's interpretation of our statutes. The effect of appellee's theory would be to grant extraterritorial jurisdiction to the courts of Arizona. It is often said that a state may not exercise its judicial jurisdiction beyond its territorial limitations. Funk v. Fillman, 44 Ariz. 263, 36 P.2d 574; Restatement, Conflict of Laws, section 73 (1934). Moreover, statutory enactments of the legislature are presumed to be confined to the state in the absence of express statements to the contrary, Walbridge v. Robinson, State Engineer, 1912, 22 Idaho 236, 125 P. 812, 43 L.R.A.,N.S., 240, and if possible should be construed as consistent with the common law. In re Reynold's Guardianship, 1943, 60 Cal.App.2d 669, 141 P.2d 498.

But this does not imply that we read these statutes as prohibiting suits against foreign representatives controlling assets in Arizona, for then the court might not be assuming extraterritorial jurisdiction. That question need not be decided. We fail to find substance in any of appellee's arguments on this point, and hold that the court below erred in assuming jurisdiction over the foreign administrator; and its decrees, to the extent they attempt to affect the foreign representative, are void.

Our decision henceforth will be confined to a discussion of the proceedings below as they relate to the heirs in their individual capacity and the domestic estate. Appellants raise four arguments questioning the validity of the temporary restraining order issued below which restrained

the heirs from taking any action designed to dispossess appellee from the mine in Mexico. The first contention is that there was inadequate service of the order to show cause as against Melvin Farnsworth. The court found that the order to show cause was left at his usual place of abode. Appellants contend that service of such an order must be made on the individual in person. In support of this proposition appellants refer us to Rules Civ.Proc. Rule 4 (d), section 21–305, A.C.A.1939 (as amended). This rule provides for the service of summons and complaint at the usual place of abode. Appellants conclude, therefore, that this method of service does not apply to an order to show cause why a restraining order should not issue. We fail to agree. It is true that Rule 4(d) refers to only two documents, the summons and complaint. But Rules Civ.Proc. Rule 5(a), section 21–321, A.C.A.1939 and Rules Civ.Proc. Rule 5(b), section 21–322, A.C.A.1939, are much broader. This latter rule provides for the manner of serving other papers. Service is specifically stated to be permissible at the usual place of abode under Rule 5(b), and an order to show cause is included within the scope of this rule. In re Long Island Properties, Inc., D.C.S.D. N.Y.1941, 42 F.Supp. 323. We find service of an order to show cause to be permissible when left at the usual place of abode.

The second contention advanced by appellant Melvin Farnsworth is that in any event, service was not obtained at his "usual place of abode" as required by the rule. This contention is broader in that it questions service of the complaint and summons as well as the order to show cause. On evidence submitted the trial court ruled against appellant Melvin Farnsworth. A variety of documents were introduced designed to show that Melvin Farnsworth resided in Mesa, Arizona. Most of these papers related to his purchase of a pickup truck. To rebut such evidence Melvin offered to show the circumstances surrounding the purchase and the declarations contained in the documents. He argued that the truck had in reality been purchased by the Farnsworth Dairy Co. in Mesa, and that the address given on these documents was only for his convenience in making the purchase. Melvin contended that he was a resident of Mexico, living in Hermosillo with his wife, a citizen of that country. The trial court refused this offer stating that the terms of a document may not be altered by parol evidence. This was error. The document in question was a loan application filled in by Farnsworth. It was designed to give information to the seller of the truck and the bank which was to extend credit to Farnsworth. It was not the type agreement in which two parties integrate their respective promises. Moreover, even if such were the case it is questionable whether the parol evidence would bar appellant from introducing evidence showing that the address was misstated. A party's ad-

dress would seldom be a material element in the obligation. A fact which is included in an agreement may be controverted by parol evidence if it does not alter the legal obligation. First Trust Co. of Lincoln v. Airedale Ranch & Cattle Co., 1939, 136 Neb. 521, 286 N.W. 766; Restatement, Contracts, section 244 (1934). If the parol evidence rule would not bar evidence on the question of his address in a document integrating mutual obligations, a fortiori, it will not bar evidence designed to show Farnsworth's correct address here. We rule that the trial court's exclusion of this evidence was reversible error. It is not yet finally established whether the order to show cause or the complaint and summons have been validly served on Farnsworth, thereby giving the court jurisdiction. All judgments ostensibly affecting Farnsworth in his individual capacity are therefore void.

■■■■ Appellants' third argument questions the validity of the temporary restraining order on still broader grounds. Appellants state:

> "* * * this is a suit against a foreign executor and that the courts of this state have no jurisdiction whatsoever against * * * the subject matter of a foreign estate."

The terms of the order prohibited the heirs from taking any action designed to dispossess appellee from the mine in Mexico. A state may enjoin its inhabitants from acting in other jurisdiction. Re-Statement, Conflict of Laws, section 96; Paramount Pictures, Inc., v. Blumenthal, 1939, 256 App. Div. 756, 11 N.Y.S.2d 768. The restraining order did not act on the subject matter of a foreign estate but only in personam against the heirs. Wehrhane v. Peyton, 1948, 134 Conn. 486, 58 A.2d 698, 6 A.L.R.2d 887.

■■■■ The final argument is that there were insufficient facts before the court below to warrant an injunction. Here the appellants had given the appellee notice to quit, the threat was not fanciful, cf. Gainey v. Folkman, D.C.Ariz.1953, 114 F. Supp. 231. We find no abuse of discretion in maintaining the status quo of the parties during this litigation. Remele v. Hamilton, Ariz., 1954, 275 P.2d 403. Otherwise the final judgment could be rendered meaningless by the parties.

Appellants' next assignment of error concerns the decree of specific performance issued below, as to which the appellant presents two arguments. The first is that the court erred in granting the relief by judgment by default under Rules Civ. Proc. Rule 37(b), section 21–742, subd. 2–iii, A.C.A.1939. This provision itemizes sanctions which may be employed by the court when an order under Rules Civ.Proc. Rule 34, section 21–736, A.C.A.1939 (as amended), is not observed. Rule 34 provides for the discovery of documents. Appellants were ordered to produce various documents. Most of these related to the Mexican probate proceedings, communications

among appellants, communications relating to disbursement of royalties received from appellee and communications between appellants and appellee. The first order was issued on November 13, 1951. There was no response. On October 18, 1951 the same order was again made. The response to this was considered inadequate. On April 15, 1952 appellants were again ordered to produce documents relating to the Mexican probate proceedings and communications between appellee and appellants. There was no response.

■ Various sanctions are itemized in Rule 37(b) which a court may employ in meeting such a situation. In Bernat v. Pennsylvania R. Co., D.C.E.D.Pa.1953, 14 F.R.D. 465, the court stated:

"* * * the rule provides for a number of consequences of varying degree of severity, and I think it is clearly intended that the Court should fit the penalty to the nature and effects of the refusal. Of course, in refusing to obey the order of the Court the defendant takes a calculated risk, but it is plain that it was not intended that he should automatically incur a default judgment in every case."

It appears the appellants here miscalculated, for the trial court held:

"* * * the aforesaid defendants and each of them have wilfully failed to comply with the orders of this court, and with section 21–735 and section 21–736, Arizona Code Annotated: that the

said actions of said defendants and each of them are such as to make it proper and appropriate for the exercise of this court's discretion under section 21–742 and section 21–744, Arizona Code Annotated, to enter judgment for plaintiff."

Even though the court found the appellants had wilfully failed to cooperate, appellants contend that the appellee was not injured by the delay and therefore the trial court abused its discretion. We cannot agree. The mine in Mexico was evidently subject to being sold to meet the demands of a creditor in Mexico. Appellee's rights under this contract may define his claim before these courts. A delay under these circumstances would appear important. On finding that the appellants had wilfully refused to comply with the discovery provisions of our code, a fair trial then became procedurally impossible. Hammond Packing Co. v. State of Arkansas, 1909, 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530. We find no error here.

■ Appellants' second argument on this point is that the court could not grant this remedy in any manner. The basis for this argument is the lack of jurisdiction over two of the heirs. Appellants state:

"If a suit is brought against the heirs, it is on the theory that the property descended to them on the death of the decedent, and accordingly since under this view all of the heirs would have an interest in the property, all

of them would be indispensable parties."

We fail to agree. The interests of those heirs not before the court were not affected by the decree. Stephen v. Beall, 1875, 22 Wall., U.S., 329, 22 L.Ed. 786. The decree was in personam and did not affect any property in Mexico as such. Massie v. Watts, 1810, 6 Cranch, U.S., 148, 3 L. Ed. 181; Deschenes v. Tallman, 1928, 248 N.Y. 33, 161 N.E. 321; Tully v. Bailey, 1941, 46 Cal.App.2d 195, 115 P.2d 542.

■ An inconsistency appeared between the oral rendition from the bench and the terms of the written judgment. Since the relief requested here was not that for money, costs or the denial of relief the written formal judgment is not surplusage, but cf. Southwestern Freight Lines v. Shafer, 1941, 57 Ariz. 111, 111 P.2d 625, but expresses the detailed intention of the court. The judgment as signed and filed by the court below resolved any prior inconsistency and is controlling. Rules Civ.Proc. Rule 58, section 21–1230, A.C.A.1939 (as amended). We find no error here.

During the proceedings below appellee was dispossessed from the La Plomosa mine (mine sold by decedent) at the instigation of the Mexican creditor of the decedent. The foreign administrator took possession of the mine on this creditor's behalf. Within a short time appellee filed a supplemental complaint in which damages were asked for his dispossession. Later appellee was prevented from entering the adjacent La Bonanza mine. Appellee then filed a second supplemental complaint alleging damages which were granted. Appellants object to the allowance of damages for La Bonanza, stating that this supplemental complaint stated a new claim for relief. We need not decide this question in view of our subsequent holding.

■ Dispossession from La Bonanza was caused by the foreign administrator placing debris in a tunnel which gave access to both mines. Appellants' contention is that the domiciliary estate should not be liable for the torts of the foreign administrator. Appellee's position is stated in his brief:

"* * * the lower court did not hold the appellant estates responsible on the basis of a tort of the executor, but rather because of a breach of a covenant for which the estates were liable * * * in an action breach of contract, the recoverable damages are all damages as arise naturally from the breach or that could have been reasonably anticipated as arising from such breach."

We cannot agree with this extension of contractual liability as to the La Bonanza mine. It cannot be said that the decedent at the time the contract was negotiated contemplated that a Mexican administrator of his estate would be guilty of this conduct. Such is too remote. Restatement, Contracts, section 330 (1934); Jacob v. Miner, 1948, 67 Ariz. 109, 191 P.2d

734. Appellants did not specifically assign as error the granting of the money judgment for damages against the Arizona estate for breach of the La Plomosa contract, and we need not consider that question.

The remaining question is whether the damage award must be retried or returned to the court below for segregation. The appellee alone introduced evidence on the damage question. The court concluded that during the time appellee was out of possession of La Plomosa he had lost the profits from 11¼ carloads of ore; that during the time appellee was deprived of possession of La Bonanza he had lost profits from 3¾ carloads of ore, and that the profit from each carload was $4,300. The judgment included $48,375 as damages from La Plomosa and $16,125 as damages from the La Bonanza. The method of computation is obvious from the record. Decreasing the total amount granted appellee against the domiciliary estate to $48,375 does not require a new trial under these circumstances. Barbara Development Corporation v. Jordan, 1931, 37 Ariz. 497, 295 P. 782.

The judgment against the foreign executor is reversed with instructions to the lower court to enter judgment dismissing the complaint against the foreign executor and dissolve the injunction against him, and vacate the judgment of contempt against Melvin Farnsworth individually and in his representative capacity.

The judgment enjoining the administratrix of the Arizona estate and the heirs from taking any steps to dispossess appellee from the La Plomosa mine, is affirmed, except as to Melvin Farnsworth.

The judgment decreeing that the contract be specifically performed by the execution of the necessary documents is affirmed, except as to Melvin Farnsworth individually and in his representative capacity.

The judgment awarding punitive damages against Melvin Farnsworth individually is reversed.

The judgment awarding damages for the dispossession of the La Bonanza mine is reversed.

That portion of the judgment for money damages attributable to the dispossession from the La Plomosa mine is affirmed as to the Arizona estate and reversed as to all other parties, and the lower court is directed to make the necessary segregation and enter judgment accordingly.

The judgment finding proper service of the complaint and summons and the order to show cause on Melvin Farnsworth in his individual capacity is reversed and a new trial is ordered on these issues.

Each of the parties to this appeal shall bear his own costs in this court.

PHELPS, C. J., and STANFORD, UDALL, and WINDES, JJ., concurring.