454 P.2d 1016

Ike RHODES and Verda Rhodes, husband and wife, Appellants,

v.

EL RANCHO MARKETS, an Arizona corporation, Appellee.

No. 2 CA–CIV 591.

Court of Appeals of Arizona.

May 28, 1969.

Rehearing Denied July 1, 1969.

Review Denied Sept. 23, 1969.

Murphy & Vinson, by Carl E. Hazlett, Tucson, for appellants.

Lesher, Scruggs, Rucker, Kimble & Lindamood, by William E. Kimble, Tucson, for appellee.

HATHAWAY, Judge.

This appeal arises out of a lawsuit filed to recover for personal injuries sustained when Mrs. Verda Rhodes (hereinafter plaintiff) fell while shopping in the appellee's self-service market. The case was originally tried in the superior court of Pima County and a directed verdict was granted the defendant supermarket at the end of the plaintiff's case. On appeal, we reversed the trial court and remanded the cause for a new trial, Rhodes v. El Rancho Markets, 4 Ariz.App. 183, 418 P.2d 613 (1966). The case was retried and a jury verdict was returned in favor of the defendant. The plaintiff filed a motion for new trial which was denied, hence this appeal.

Mrs. Rhodes slipped and fell while she was walking near the entrance to the produce department in the store. She observed a piece of lettuce clinging to the bottom of her shoe and drops of moisture were on the floor nearby.

The plaintiff sets forth five questions for review. First, it is contended that the trial court erred in refusing to permit the plaintiff's counsel to read certain portions of the store manager's deposition to the jury. The manager of the store at the time of the accident was Harold W. Helms. His deposition was taken on October 31, 1962. The plaintiff contends that the trial court erroneously excluded the deposition, pointing out that if any part of it contained admissible material it should have been admitted under Rule 26(d) of the Arizona Rules of Civil Procedure, 16 A.R.S.[1]

During the course of the trial, Charles Ramsey, district supervisor of El Rancho Market, testified concerning the general operation of the store. He stated that his testimony was based on information which he had secured from an accident report allegedly prepared by Helms. The report indicated that Mrs. Rhodes had fallen on Sunday, November 12, 1961, at 2 p. m. All other evidence indicated that she had fallen on Tuesday, November 21, 1961, at 9 a. m., and the parties subsequently stipulated to the correctness of the latter date. Tuesdays were "double stamp" days and were very busy starting early in the morning.

The plaintiff offered the following excerpts from the deposition and the trial court refused their admission:

"Q   Then you do specifically recall the day in question?

A   Yes, it was a Sunday afternoon.

\*     \*     \*     \*     \*     \*

Q   Now, this accident took place at approximately 2:00 o'clock in the morning?

1. Rule 26(d) provides, in part:
"At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had due notice thereof, in accordance with any one of the following provisions:
"1. Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness.
"2. The deposition of a party or of any one who at the time of taking the deposition was an officer, director, or managing agent of a public or private corporation, partnership, or association which is a party may be used by an adverse party for any purpose."

A  2:00 o'clock in the afternoon.

Q  2:00 o'clock in the afternoon, and would it be a fair statement to say that the floor was last cleaned before the accident early in the morning of November 12?

A  Yes.

Q  So you don't clean it, the floor wouldn't be clean from early morning to late afternoon?

A  Not necessarily. If there is paper or anything on the floor, the floor is swept. In the produce department, that department is swept anywhere from five to fifty times a day, depending how much green stuff we put out and the condition of it.

Q  But on this particular day the floor hadn't been swept?

A  That's right.

 *     *     *     *     *     *

Q  It is possible then that after Mrs. Rhodes slipped and before you got there some employees, following instructions, swept it up?

A  No, that is not possible.

Q  Why isn't that possible?

A  Because of the time element involved from the time I left her to the time I came back, and the fact that we were busy at the time and there was nobody available there to do it."

The plaintiff argues that the foregoing testimony was admissible on a number of grounds. First, it is submitted that since Mr. Ramsey's testimony was based entirely on the report of Mr. Helms, which was obviously in error concerning the time of the accident, the jury should have been given access to the testimony of the preparer of the report, Helms. The defendant responds, and we believe correctly, that the deposition would be irrelevant in this connection since Ramsey did not testify to any of the details of the accident.

The plaintiff next contends that the testimony shows that the floor had not been swept since early morning and that the store employees were busy and no one was available to sweep. The defendant answers that the testimony is irrelevant because the deposition indicates that the accident Helms was referring to occurred on a different day and at a different time. The defendant offered to stipulate to the time and place of the accident, which stipulation was finally accepted, and it is contended that the trial court properly prevented the plaintiff from creating an ambiguity through admission of the testimony and consequent confusion through the differing accident dates.

Regardless of the date of the accident, Helms believed that he was talking about the plaintiff's fall, in the deposition. The testimony indicates that no one was available to sweep the floor at the time the fall occurred. It would also indicate that when the store employees were otherwise busy they were unavailable for sweeping. Since from this testimony the jury could reasonably conclude that no one was available to maintain the floor in a safe condition, the plaintiff was clearly prejudiced by its exclusion. *Cf.* City of Tucson v. Holliday, 3 Ariz.App. 10, 411 P.2d 183 (1966); Farnsworth v. Hubbard, 78 Ariz. 160, 277 P.2d 252 (1954).

■ In McGuire v. Valley National Bank of Phoenix, 94 Ariz. 50, 381 P.2d 588 (1963), it was held that error is not reversible if it does not cause a material defect in the plaintiff's case. Here, there was testimony that the plaintiff slipped on a piece of lettuce—thus providing some evidence that the proximate cause was failure to keep the floor clean. The jury might reasonably have concluded from the unavailability of employees to clean the floor that the defendant was negligent. Exclusion of the deposition therefore requires that we reverse.

■ The plaintiff next asserts that the trial court erred in refusing to instruct the jury respecting the doctrine of *res ipsa loquitur*. It is the ordinary rule in negligence cases that the fact of the occurrence of an accident does not permit an inference of negligence. "People can get hurt on al-

most anything." Cummings v. Prater, 95 Ariz. 20, 26, 386 P.2d 27, 31 (1963).

■ The doctrine of *res ipsa loquitur* constitutes an exception to this general proposition. Literally, the term means "the thing itself speaks," and in application the doctrine provides that the occurrence of an accident alone, under prescribed circumstances, may constitute evidence of negligence. Pickwick Stages Corp. v. Messinger, 44 Ariz. 174, 36 P.2d 168 (1934).

■ In its opinion in O'Donnell v. Maves, 103 Ariz. 28, 436 P.2d 577 (1968), our Supreme Court set forth the conditions which must appear before the doctrine of *res ipsa loquitur* may be applied. One of these conditions is:

> " '[I]t [the accident] *must be caused by an agency or instrumentality within the exclusive control of defendant * * *.*" 436 P.2d 579.

■ Here, the accident was not caused by a single agency or instrumentality, but by an interaction between the manner of the plaintiff's walking, and the coefficient of friction between the bottoms of her shoes and the floor, as affected by a piece of lettuce or some water thereon. Where such is the case then the law, and more importantly good sense, would require that no inference of negligence arise such as might be charged against a particular defendant, because unless it is shown that the control was his, the thing itself *does not* speak. It is our opinion that the instruction on *res ipsa loquitur* was properly refused.

The trial court refused to give plaintiff's requested instruction No. 15:

> "When in a self-service market operation, the customer is expected to handle and examine produce displayed in open bins, the storekeeper must take reasonable protective measures for the benefit of customers who might slip and fall on vegetable matter dropped on the floor by employees or other customers; you may find the defendant negligent if the defendant failed to take such reasonable protective measures; or you may find the defendant negligent if the protective measures taken were not commensurate with the risk of harm to customers of the market."

The defendant contends that nothing would have been added by the giving of the foregoing instruction, since the essence of the instruction was covered by instructions which were given, including the following:

> "Now the owner of a store must use reasonable care to maintain the floors which the public is invited to use in such a condition that under the circumstances of the particular case they are reasonably safe for the customer to use, and a business invitee has the right to rely upon the owner to exercise reasonable care in making the premises safe for her use and has the right to assume that the premises are reasonably safe for her use as such an invitee. A greater duty rests upon one engaged in selling merchandise to discover whether a dangerous condition exists on the premises than devolves upon the invitee who has a right to assume that the premises are reasonably safe for his use." (Plaintiff's requested instructions Nos. 12 and 17.)

The jury was also instructed concerning the general duty owed by a proprietor to its business invitees, and they were specifically instructed that this duty existed in connection with keeping the floors of the premises in a condition reasonably safe for use by its customers.

■■ The charge to the jury is to be considered as a whole, and where the substance of a requested instruction has been covered by instructions given, it will not be error to refuse to give the requested instruction, notwithstanding that the request be a proper statement of the law. Johnson v. Orcutt, 92 Ariz. 295, 376 P.2d 557 (1962); MacNeil v. Perkins, 84 Ariz. 74, 324 P.2d 211 (1958). The substance of this request by the plaintiff was adequately covered, and we find that the refusal to give this instruction was not error.

■ The plaintiff next contends that the trial court erred in giving defendant's requested instruction No. 3. The objection made to the trial court was " * * * that it's not the law in Arizona since Rhodes v. El Rancho." The instruction consists of an opening paragraph and four subparagraphs. The objection is insufficient in that it does not constitute a distinct statement of the grounds therefor within the purview of Rule 51(a), Rules of Civil Procedure, 16 A.R.S.; Tanner v. Pacioni, 3 Ariz.App. 297, 413 P.2d 863 (1966); Salinas v. Kahn, 2 Ariz.App. 181, 407 P.2d 120, modified, 2 Ariz.App. 348, 409 P.2d 64 (1965).

The plaintiff next asserts as error the modification of her requested instruction No. 5. The instruction reads as follows:

"The owner of premises used by business visitors is liable not only for dangerous conditions which may exist of which the owner knows, but for those conditions which the owner could or should discover in the exercise of ordinary or reasonable care. *He has a duty to inspect his premises to discover possible defects.*"

As modified, the italicized portion of the instruction above was not given, and the plaintiff claims that this modification constituted reversible error.

■ We find that the jury was instructed respecting the proprietor's "duty to use reasonable measures commensurate with the risk involved to discover" debris upon the floor or other dangerous conditions—plaintiff's requested instruction No. 18. We are of the opinion that this charge sufficiently covered the subject matter of the omitted portion of the plaintiff's requested instruction. A business invitee is entitled to expect that the possessor will exercise reasonable care toward making the premises safe for his entry, and "He is entitled to expect such care in inspection to discover * * *" dangerous conditions. Restatement (Second) of Torts § 343, comment b. A failure to inspect and thereby discover a dangerous condition upon business premises does not, by itself constitute a breach of a proprietor's duty toward an invitee; this breach will occur only in case the circumstances were such that the exercise of reasonable care would have required an inspection. Rhodes v. El Rancho Markets, supra. The modification of plaintiff's requested instruction No. 5 was proper.

The final issue raised on this appeal concerns requests for admissions made by the plaintiff, and the effects to be given to these requests where defendant's response was filed some two days after expiration of the ten-day period in which to make a timely response. More than one year after the response had been filed, the plaintiff moved to strike the response as being untimely made. The plaintiff's counsel confessed a total absence of any prejudice by virtue of the two-day tardiness, and the trial court denied the motion to strike.

Rule 36(a), Rules of Civil Procedure, 16 A.R.S., provides in part as follows:

"Each of the matters of which an admission is requested *shall be deemed admitted* unless, within a period designated in the request, not less than ten days after service thereof or within such shorter or longer time as the court may allow on motion and notice, the party to whom the request is directed serves upon the party requesting the admission either a sworn statement denying specifically the matters of which an admission is requested or setting forth in detail the reasons why he cannot truthfully admit or deny those matters * * *." (Emphasis supplied)

■ The purpose of Rule 36(a) is to "expedite the trial and to relieve parties of unnecessary costs in proving facts." Aetna Loan Co. v. Apache Trailer Sales, 1 Ariz. App. 322, 325, 402 P.2d 580, 583 (1965). While our Supreme Court has never had occasion to pass on the apparent mandate of the above-quoted portion of Rule 36, it has recently characterized the construction which should be placed, in our opinion, not only upon Rule 36(a), but upon all the Rules of Civil Procedure under such circumstances.

"* * * Rules of procedure are designed to facilitate the *just and expeditious* prosecution of a case through the courts and *should not be burdened with the niceties of gamesmanship; the rules were promulgated to obviate that very evil.*" Union Interchange Inc. v. Van Aalsburg, 102 Ariz. 461, 464, 432 P.2d 589, 592 (1967). (Emphasis supplied)

For the source of this enlightened judicial attitude toward procedural rules, one need search no further than Rule 1, Rules of Civil Procedure, 16 A.R.S.:

"These rules govern the procedure in the superior courts of Arizona in all suits of a civil nature whether cognizable as cases at law or in equity. *They shall be construed to secure the just, speedy, and inexpensive determination of every action.*" (Emphasis supplied)

Our Constitution provides that:

"* * * No cause shall be reversed for technical error in pleadings or proceedings when upon the whole case it shall appear that substantial justice has been done." Ariz.Const. art. 6, § 27, A.R.S., as amended.

See also, Rule 61, Rules of Civil Procedure, 16 A.R.S.

In view of the trial court's exclusion of the deposition as previously discussed, the judgment is reversed.

GORDON FARLEY, Superior Court Judge, concurs.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge GORDAN FARLEY was called to sit in his stead and participate in the determination of this decision.

MOLLOY, Chief Judge (specially concurring).

I concur in the result reached, but the majority opinion inadequately expresses my reasons for believing that there should be a new trial granted to the plaintiffs in this action.

The plaintiffs' case is predicated upon the assertion that the defendant was not using the proper *methods* to keep its floors free from the type of debris which might cause a slipping accident. In attempting to show this, the plaintiffs cross-examined the defendant's district supervisor as to the methods used in keeping produce from getting on the floors of its stores. This witness, Mr. Ramsey, testified that the defendant knew of a hazard involved in handling "wet" produce, such as lettuce, but that the defendant used constant vigilance to protect against accidents caused by such produce being dropped on the floor. He described in detail the system used in such manner as to convey the impression that the floors were kept as clean as possible. Mr. Ramsey answered with a categorical "Yes, sir," the following question:

"In November of 1961, I take it *all during the month of November 1961* you had the same policy at the Speedway store *concerning sweeping and maintenance of the floors, clean-up of the floors*; did you not?" (Emphasis added)

Mr. Ramsey was not at this store on the day of this alleged accident and had no personal knowledge of the occurrence to which the plaintiffs testified. Whatever knowledge he had of this particular incident he based upon the written report submitted by the store manager, Mr. Helms, which report indicated that the accident occurred on November 12, 1961. The plaintiffs were not permitted to introduce portions of Mr. Helms' deposition at the trial, because Mr. Helms referred in his deposition to the fall of a "Mrs. Rhodes" which occurred on November 12, 1961, at 2 p. m., and the plaintiff had testified that she fell on November 21, 1961, at 9 a. m. Accordingly, the trial court concluded that Mr. Helms was talking about another accident so that his testimony was immaterial.

Though the defendant eventually stipulated that this accident occurred on November 21st, Mr. Ramsey refused, on cross-examination, to either admit or deny that the plaintiff had slipped on the floor of the

Speedway store either on November 12th, or on November 21st. The plaintiffs' position at the trial was that, regardless of whether Mr. Helms was talking about this same accident, or another one, the testimony was relevant. I agree with this contention.

Mr. Helms was a "managing agent" of the defendant, City of Tucson v. Koerber, 82 Ariz. 347, 354, 313 P.2d 411, 416 (1957), and therefore his deposition was admissible for " * * * any purpose," Rule 26(d) (2), R.Civ.P., 16 A.R.S.

It is my view that the deposition of Mr. Helms was admissible for either one of the two purposes outlined by plaintiffs' offer: (1) if Mr. Helms was testifying as to a slip and fall incident concerning this plaintiff, then his testimony would tend to indicate to some degree that the defendant was not as vigilant in sweeping its floors as Mr. Ramsey would have had the jury believe (" * * * on this particular day the floor hadn't been swept * * * we were busy at the time and there was nobody there to do it [sweep the floor] * * * "), or (2) if Mr. Helms had reference to another customer who slipped on this floor nine days before this accident in the same location, his testimony would have probative value towards showing that the methods being used by the defendant during November, 1961, to protect against slipping accidents, were inadequate and that the defendant had notice of this inadequacy. Slow Development Company v. Coulter, 88 Ariz. 122, 125, 353 P.2d 890, 892 (1960).

If the deposition was admissible for either of these purposes, it should have been admitted. Alires v. Southern Pacific Company, 93 Ariz. 97, 107, 378 P.2d 913, 920 (1963).; and see 1 Wigmore, Evidence § 215, at 711 (3d ed. 1940). In weighing prejudice, it is important to note that there was no duplication of this evidence in the record.

In addition to the portions of Mr. Helms' deposition quoted in the majority opinion, the plaintiffs also separately offered a portion which would have shown that Mr. Helms had investigated two other falling accidents at this store. There is no showing as to when or where these falls occurred. This portion was properly rejected by the trial court. Montgomery Ward & Co. v. Wright, 70 Ariz. 319, 220 P.2d 225 (1950).

I concur in holding that this case is properly remanded for a new trial.